FILED

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

13 MAR 13  PM 3:27

U.S. BANKRUPTCY COURT
DISTRICT OF MARYLAND
BALTIMORE

| | | |
|---|---|---|
| IN RE: | } | |
| **RENEE LOUISE MCCRAY** | } | **Case No. 13-26131** |
| Debtor(s) | } | **Chapter 7** |
| Plaintiff(s) | } | |
| **RENEE LOUISE MCCRAY** | } | **Adversary No.  13-00710** |
| vs. | } | |
| **WELLS FARGO BANK N.A.** | } | **Judge Nancy V. Alquist** |
| and | } | |
| **JOHN DOES 1-20** | } | **DEMAND FOR TRIAL BY JURY** |
| Defendants | } | |

**TO THE HONORABLE JUDGE NANCY V. ALQUIST**
**UNITED STATES BANKRUPTCY JUDGE**

### AMENDED ADVERSARY PROCEEDING COMPLAINT

COMES NOW, Renee Louise McCray, Debtor respectfully herein after "Plaintiff" and

"Affiant",  file this Amended Adversary Proceeding Complaint against WELLS FARGO BANK,

N.A. (hereinafter "Defendant") and JOHN DOES 1-20 (hereinafter "Defendants") and hereby

replaces its original Adversary Proceeding Complaint (of record before the Court) inclusive in its

entirety all arguments, precedents and pleadings formerly made.

Plaintiff Renee Louise McCray who is unschooled in law to notice the court of

enunciation of principles as stated in Haines v. Kerner, 404 U.S. 519, complaints, petitions, and

other writs shall have the court look to the substance of the pleadings rather than in the form, and

hereby makes the following complaint in the above referenced matter without waiver of any

1

defenses or rights, now or in the future seeking to determine the nature extent and validity of lien in Plaintiff's property commonly known as 109 Edgewood Street, Baltimore, Maryland 21229 (hereinafter known as Plaintiff's property).

The Courts have long held *Pro se* pleadings are to be read liberally and if there is relief available that they have failed to request, the Courts should be lenient and the *Pro se* litigant should be afforded that available relief. *Haines v. Kerner*, 404 U.S. 519 (1972). In re *Haines pro se* litigants are held to less stringent pleading standards than bar licensed attorneys. Regardless of the deficiencies in their pleadings, *pro se* litigants are entitled to the opportunity to submit evidence in support of their claims. In *Platsky v. C.I.A.* 953 F.2d. 25, the court errs if the court dismisses the *pro se* litigant without instruction of how pleadings are deficient and how to repair pleadings. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1959); *Picking v. Pennsylvania R. Co.*, 151 Fed 2nd 240; *Pucket v. Cox*, 456 2nd 233, "Pro se pleadings are to be considered without regard to technicality; pro se litigants' pleadings are not to be held to the same high standards of perfection as lawyers."

## JURISDICTION AND VENUE

1. This adversary proceeding is brought pursuant to 11 U.S.C. § 506 and Federal Rule of Bankruptcy Procedure 7001.

2. The Court has jurisdiction pursuant to 29 U.S.C. § 151, 157, and 1334(b). Venue is proper pursuant to 28 U.S.C. § 1409.

3. This adversary proceeding is core proceeding as defined by 28 U.S.C. § 157(b)(2)(b) and (b)(2)(k). This is an action to determine the validity, extent, or priority of lien on property evidenced by a deed of trust, and the allowance and disallowance of claims against the property.

## PARTIES

4.  At all time relevant herein, Plaintiff RENEE L. MCCRAY (hereinafter "Plaintiff"), is the owner of a property in Baltimore City located at 109 Edgewood Street, Baltimore, Maryland 21229, and was the borrower on the Mortgage Note at issue pertaining to that property in this Complaint.

5.  The Defendants in this lawsuit are as follows:

    a.  WELLS FARGO BANK, N.A. (hereinafter "Defendant") is a for-profit bank doing business in Maryland.

    b.  JOHN DOES 1-20 are undisclosed, unnamed and unknown investors, participants, corporate or other entities, conduits, trustees, servicers, custodians and others in a scheme that involve the Defendants and other known and unknown parties who may have or claim an interest in the Plaintiff's property. Plaintiff cannot state with certainty that a viable cause of action lies herein as against such individuals or entities, or Plaintiff is unable to allege the elements of such a cause of action, at this time prior to discovery, with sufficient specificity to satisfy the requirements of Federal Rules of Discovery, wherefore said Defendant(s) are named in accordance with the provisions of Federal Rules of Civil Procedure 17.

    Plaintiff reserves the right to amend the Complaint to allege the true names and capacities of such fictitiously named Defendant(s) when the same become known or when it has been ascertained with reasonable certainty that a cause of action hereunder can be satisfactorily stated and maintained as against each fictitiously named individual or entity.

3

## FACTUAL ALLEGATIONS

6.   Paragraphs 1 through 7 are re-alleged as though fully set forth herein.

7.   Plaintiff filed a voluntary petition under Chapter 13 under the United States Bankruptcy Code on September 23, 2013.

8.   Plaintiff converted the voluntary petition under Chapter 13 to a voluntary Chapter 7 on January 30, 2014.

9.   This action arises out of Plaintiff, Renee McCray's execution of a Promissory Note and Deed of Trust to refinance Plaintiff's Baltimore, Maryland home both of which are dated October 7, 2005.

10.   On October 7, 2005 Plaintiff signed a Promissory Note and Deed of Trust with the Lender American Home Mortgage Corporation.

11.   American Home Mortgage Corporation filed for bankruptcy in 2007 and is no longer in business.

12.   In an effort to determine the actual owner of the Plaintiff's Note, as defined by the Maryland Code Commercial Law ("UCC"), numerous requests and correspondence has been sent to the servicer Wells Fargo Home Mortgage ("WFHM"), Federal Home Loan Mortgage Corporation ("Freddie Mac"), Mortgage Electronic Registration Systems, Inc. ("MERS"), the substitute trustees ("Trustees") and Wells Fargo, over the period of two years.

13.   Plaintiff submitted numerous requests to Wells Fargo, WFHM, Freddie Mac and the Trustees for the production of documents that would verify they were the Person Entitled to Enforce the Promissory Note and make demands of payment from me under the threat of

foreclosure.  The responses were various reasons as to why they would not provide the information, or in some cases, no response at all.

14.  Numerous requests for validation of the alleged debt were sent to Wells Fargo, WFHM, Freddie Mac and the Trustees.  Proper validation of the alleged debt never occurred.

15.  Requests to visually inspect the original Promissory Note that the Defendants allegedly have in their possession, were not honored.

16.  The original Promissory Note must be inspected to validate the authenticity of the signatures and to determine if the indorsements are valid.

17.  Under UCC § 3-501(b)(2) if there is a request for proof, the physical note shall be produced.  Defendants have chosen not to, and/or refused to produce the physical Promissory Note.

18.  By tacit admission the Defendant have effectively admitted Defendant have no rights under the law and are not the Person Entitled to Enforce the Note.

19.  The Defendant refusal to answer requests for documents prior to initiating a foreclosure action could be construed as a deliberate attempt to conceal information.  "Silence can only be equated with fraud where there is a legal or moral duty to speak or when an inquiry left unanswered would be intentionally misleading."  *United States v. Kis*, 658 F.2d, 526 (7th Cir. 1981). Cert Denied, 50 U.S.L.W.2169; S. Ct. March 22, (1982).

20.  There is no proof that a proper chain of assignment took place and that the lien positions were properly perfected.  Courts have ruled that the only way to prove the perfection of any security, including promissory note is by actual possession of the Note.

21.  Current or prior possession must be proven under the UCC guidelines.  The production of an original Promissory Note does not establish that the person presenting the Note was

transferred the rights to enforce the instrument. That determination must be made based on the UCC. Even if the Defendant do have the original Note, they must still answer the questions of how they acquired it and when, and what rights of enforcement were transferred to the Defendant.

22. Numerous requests were sent to the Defendant requesting the necessary evidence that they are the actual party in interest to initiate a foreclosure action, how they obtained the alleged Promissory Note, what rights were transferred to them via negotiation and whether they actually are in possession of the original Note. There requests were not answered and/or denied.

23. When such conduct has been committed, there is precedent in the law that allows for responsibility of their actions. *Fina Supply, v. Abilene Nat. Bank*, 726 S.W.2d 537, 1987, "Party having superior knowledge who takes advantage of another's ignorance of the law to deceive him by studied concealment or misrepresentation can be held responsible for that conduct."

24. Black's Law Dictionary Fifth Edition, page 594, defines Fraud:

> *"An intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right. A false representation of a matter of fact which deceives and is intended to deceive another so that he shall act upon it to his legal injury. It consists of some deceitful practice or willful device, resorted to with intent to deprive another of his right, or in some manner to do him injury."* (Emphasis added).

25. On July 3, 2012, Defendant, Wells Fargo Bank N.A. entered a Corporate Assignment of Deed of Trust in the Land Records for Baltimore City for Plaintiff's property.

6

26.   Plaintiff denies that either Freddie Mac or Wells Fargo Bank, N.A. is the new successor

"Lender" as set forth in her Note and Deed of Trust.

## BACKGROUND

27.   The claims of WELLS FARGO BANK N.A., as the Court may read are predicated

entirely on their right to appear here as legal representative for the holders of the rights of

contract to Debtor's mortgage.

As cited the AFFIDAVIT CERTIFYING OWNERSHIP OF DEBT INSTRUMENT AND
ACCURACY OF NOTE in the original foreclosure papers, herein **EXHIBIT A**, *"I
HEREBY CERTIFY in compliance with Maryland Code Section 7-105.1(d)(2)(iii) and
Maryland Rule 14-207(b)(3) that the debt instrument submitted herewith is a true and
correct copy of the Note applicable to the present foreclosure action, **that Federal Home
Loan Mortgage Corporation is the owner of the loan** evidenced by the Note, and that
**Federal Home Loan Mortgage Corporation has authorized Wells Fargo Bank, N.A. to
be the holder of the Note for purposes of conducting this foreclosure action."**(emphasis
added)

Also cited in MD, CODE, REAL PROPERTY…. DEBT AND RIGHT TO FORECLOSE
AFFIDAVIT, herein **EXHIBIT B**, *"…..Wells Fargo Bank, N.A., directly or through an
agent, has possession of the Promissory Note. Wells Fargo Bank, N.A. is either the
original payee of the Promissory Note or the Promissory Note has been duly indorsed."*

28.   Plaintiff disputes the claim of Wells Fargo Bank, N.A. as having right to appear here as

legal representative for the holders of the rights of contract to Plaintiff's mortgage.

## FIRST CLAIM FOR RELIEF

### INJUNCTIVE RELIEF ENJOINING ALL PARTIES FROM FORECLOSURE OF THE SUBJECT PROPERTY

29.   Paragraphs 1 through 28 are re-alleged as though fully set forth herein.

30.   On October 7, 2005 Plaintiff refinanced the subject property of this dispute on the land near

109 North Edgewood Street, Baltimore, Maryland.

31. On November 27, 2013 Defendant had asserted a Proof of Claim against Debtor in the sum of $71,206.22 and further asserting that said Proof of Claim was secured by a lien against said property.  A copy of said property of claim is attached hereto as **EXHIBIT C**.

32. The record shows that assignment of this loan originally executed to American Home Mortgage by the Plaintiff was assigned by Mortgage Electronic Registration Systems, Inc. as nominee for AMERICAN HOME MORTGAGE to WELLS FARGO BANK, N.A. on **June 28, 2012** is attached hereto as **EXHIBIT D**.

**I.**

33. Plaintiff now has material evidence that the assignment to Wells Fargo Bank, N.A. is spurious and that Wells Fargo Bank, N.A. **did not in fact have proper title to the loan at the time and however they would have us believe it, with the note, was subsequently titled and transferred by** Wells Fargo Bank, N.A. **to Federal Home Loan Mortgage Corporation, i.e. FREDDIE MAC, for FREDDIE MAC to be the actual legal, titled owners of this loan to give standing to** Wells Fargo Bank, N.A. to act in any way in their behalf relevant to this loan.

34. Plaintiff asserts that the assignment of mortgage from Mortgage Electronic Registration Systems, Inc. to WELLS FARGO BANK, N.A. on June 28, 2012, **EXHIBIT D** is invalid by lack of the signatory having proper credentials to execute it for Mortgage Electronic Registration Systems, Inc. in behalf of the original lender AMERICAN HOME MORTGAGE.

35. On June 28, 2012 the invalid assignment of mortgage was executed by **Joel Altringer** acting as an Assistant Secretary of Mortgage Electronic Registration Systems, Inc. **"AS NOMINEE FOR AMERICAN HOME MORTGAGE."**

36. The MERS certifying Handbook, **EXHIBIT E** herein attached, which may be obtained through one of MERS' self authenticating websites or from other authoritative sources, specifically demonstrates in the sample Corporate resolution found therein (pages 3-4) that for a candidate to be an assistant secretary or vice president of MERS, and as such, authorized to make assignments in its behalf **must be an officers of the company that is a  member of MERS, whose employees are being certified in the MERS resolution to act for MERS in behalf of this company** to:

> "(1) release the lien of any mortgage loan registered on the MERS System that is **shown to be registered to the Member;**
> (2) assign the lien of any mortgage loan naming MERS as the mortgagee **when the Member is also the current promissory note-holder, or if the mortgage loan is registered on the MERS System, is shown to be registered to the Member;"**

37. According to the MERS certifying Handbook, for Joel Altringer to make a valid legal assignment of this mortgage to Wells Fargo Bank, N.A. he needed to be an officer of the original lender for whom Mortgage Electronic Registration Systems, Inc. was acting as nominee which was in this instance, American Home Mortgage <u>and</u> there must be a Corporate Resolution issued by Mortgage Electronic Registration Systems, Inc. for American Home Mortgage for Joel Altringer.

38. Plaintiff here provides a copy of an online verification from the self-authenticating official website of the Iowa Secretary of State that as of January 24, 2012 Joel Altringer had been issued a Notary commission through the Iowa Secretary of State identifying Joel Altringer as employed with Wells Fargo Home Mortgage at that time, five months prior to the assignment he executed supposedly as an officer of the original lender American Home Mortgage. **(EXHIBIT F)**

39. Further, Plaintiff has performed an extensive internet search for any online documentation to support the employment of Joel Altringer with American Home Mortgage at any time in the past and has found none. To the contrary, Plaintiff has found further evidence that Joel Altringer is in fact an employee with WELL FARGO being information from Zoominfo: http://www.zoominfo.com/p/Joel-Altringer/2042503792

> Joel Altringer
>
> Wells Fargo Home Mortgage
> Phone: (515) ***-****
> WhHHE1c0umLXdLPX6pYeZw
> Local Address: *Des Moines, Iowa, United States*
> Wells Fargo & Company
> *420 Montgomery Street*
> *San Francisco, California 94163*
> *United States*

40. Plaintiff also has documentation that on June 26, 2012, **two days before his execution of assignment to** WELLS FARGO BANK, N.A. in this case, acting as an Assistant Secretary of Mortgage Electronic Registration Systems, Inc. "AS NOMINEE FOR AMERICAN HOME MORTGAGE...", **he also executed an assignment, also** to WELLS FARGO BANK N.A., **acting as an Assistant Secretary of Mortgage Electronic Registration Systems, Inc. "AS NOMINEE FOR COMMERCIAL FEDERAL BANK..."** See **EXHIBIT G** attached, and http://www.pottco.org/deed_pdf/2012/9/5/4/2012-9540.pdf calling into further question the assignment in this case executed through Mortgage Electronic Registration Systems, Inc. in behalf of AMERICAN HOME MORTGAGE to WELLS FARGO BANK, N.A. **which is the sole basis for a valid chain of title to the**

**loan from AMERICAN HOME MORTGAGE to WELLS FARGO BANK, N.A. to FREDDIE MAC or to anyone else.**

41. On the basis of this evidence Plaintiff alleges Joel Altringer was not an officer of American Home Mortgage at the time of this assignment and further, has no such Mortgage Electronic Registration Systems, Inc. corporate resolution from American Home Mortgage to have been made an Assistant Secretary or Vice President of MERS, in a Mortgage Electronic Registration Systems, Inc. corporate resolution for the officers of American Home Mortgage, and as such Joel Altringer was not authorized to make an assignment of this Deed of Trust in behalf of Mortgage Electronic Registration Systems, Inc. or American Home Mortgage or their successors, which if Joel Altringer was not, makes the assignment dated June 28, 2012 an invalid assignment to WELLS FARGO BANK, N.A., and which, if proven, acts to void the claims of Freddie Mac to be the actual legal, titled owner of this loan or for Wells Fargo Bank, N.A. to act in any way in their behalf relevant to this loan and to made claim whether Freddie Mac ever had received this loan or not.

42. Plaintiff did not discover, either, the nature or the extent of this Mistaken and Erroneous Representation perpetrated upon Plaintiff by the Defendant until a date on or about February 2014.

As a proximate result of these actions and those imminently following in foreclosure, Plaintiff will be made to suffer loss thereby in the amount of the market value of the property at the time such spurious sale and Defendants should be enjoined against such sale or order to make a full reconveyance of said property to Plaintiff.

**WHEREFORE,** Plaintiff prays the Court for this relief and that it be so ordered.

## II.

43.  As affirmed in the attached affidavit, Plaintiff eye witnessed first-hand knowledge herein attached, Affiant affirms on March 9, 2013, I entered the official website of FREDDIE MAC https://ww3.freddiemac.com/corporate/ which as stated in the website is for the express purpose to provide homeowners with the means to determine authoritatively whether or not their loan is owned by Freddie Mac.  Affiant affirms, she inserted the required information which Affiant affirms by first-hand knowledge was the relevant information from her loan and the attached printout is the result of that search stating **"Our records show that Freddie Mac is the owner of your mortgage and it was acquired on November 14, 2005.  This date is also referred to as the Freddie Mac settlement date."** **(See attached Affidavit and EXHIBIT H)**  This information has now been removed from the website.

However, this conflicts with the assignment referred to above from the Land Records of Baltimore City showing this loan was not first executed in behalf of the original lender, American Home Mortgage, to anyone until it was executed to Wells Fargo Bank, N.A. on June 28, 2012, some six and a half years later than the Freddie Mac website indicates American Home Mortgage first transferred its interests in this loan.

44.  Further, a letter Plaintiff received from Wells Fargo Home Mortgage when they were acting as servicer in November 22, 2011, see **EXHIBIT I** attached, also prior to the assignment to Wells Fargo Bank, N.A. on June 28, 2012 and prior to any ability on its part to transfer the loan, states that the investor/note holder for this loan was already Federal Home Loan Mortgage Corporation on November 22, 2011.  Again, this conflict with the fact the assignment was first executed in behalf of the original lender, American Home

Mortgage, executed to WELLS FARGO BANK, N.A. on **June 28, 2012 as being the first transfer of interest in this loan to anyone.**

45. Further, still copies of the alleged note, see **EXHIBIT J** attached, with supposed indorsements included in Defendant's foreclosure action filed in Baltimore City Circuit Court in February 2013, **AFTER the assignment to WELLS FARGO BANK, N.A. on June 28, 2012, which is still the only assignment of record, shows the note was originally indorsed by** AMERICAN HOME MORTGAGE, **specifically to WELLS FARGO BANK, N.A.** and then indorsed in blank by **WELLS FARGO BANK, N.A.** transferring ownership of it after that **by possession alone** having been made then a Bearer Instrument to whomever may be the actual holder of it. The findings of the official website of FREDDIE MAC https://ww3.freddiemac.com/corporate/ indicates FREDDIE MAC acquired the loan on November 14, 2005 little more than a month after the loan had been made on October 7, 2005. From this it can be seen these alleged indorsements had to have taken place between October 7, 2005 when the loan was made, and November 14, 2005, the date the official website of FREDDIE MAC says they acquired it, again placing the official records and documents of this loan in conflict as assignment of the trust deed purporting to transfer such rights and interests in this debt to Wells Fargo Bank, N.A. was not made until some six and a half years later on June 28, 2012.

Yet Plaintiff has a letter of January 10, 2012 from Wells Fargo Home Mortgage, see **EXHIBIT K,** attached, stating in part **"The loan was sold on the secondary market to Federal Home Loan Mortgage Corporation, known as Freddie Mac, on November 14, 2005"…**Yet this contradicts **EXHIBIT J** above, included in Defendant's foreclosure action filed in Baltimore City Circuit Court in February 2013, which **shows the note was**

originally indorsed by AMERICAN HOME MORTGAGE, **specifically to WELLS FARGO BANK, N.A. first**, and **then** indorsed in blank by **WELLS FARGO BANK, N.A.**

46.   Further, Plaintiff have received **a Certified Copy** of the alleged Note from Wells Fargo Home Mortgage **with no indorsements** in September 2012 see **EXHIBIT L** attached.

So there is an unresolved dispute between records of this loan as to when, and how and from what true holder of the loan at that time Federal Home Loan Mortgage Corporation received the loan if in fact they have received it at all for whom Wells Fargo Bank, N.A. may now be acting in this action.

47.   Further, the record shows as cited in MD, CODE, REAL PROPERTY.... DEBT AND RIGHT TO FORECLOSE AFFIDAVIT, herein **EXHIBIT B**, "*.....Wells Fargo Bank, N.A., directly or through an agent, has possession of the Promissory Note, Wells Fargo Bank, NA. is either the original payee of the Promissory Note or the Promissory Note has been duly indorsed.*"

As already cited copies of the note, see **EXHIBIT J** attached, with supposed indorsements included in Defendant's foreclosure action filed in the Circuit Court for Baltimore City in February 2013 **shows the note was originally indorsed by** AMERICAN HOME MORTGAGE, **specifically to WELLS FARGO BANK N.A.** and then indorsed in blank by **WELLS FARGO BANK, N.A.** transferring ownership of it after that **by possession alone** having been made then a Bearer Instrument to whomever may be the actual holder of it.

Yet the record further shows the actual note has at no time in the Baltimore City Circuit Court action to foreclose or in this bankruptcy been produced to determine if there are

additional indorsements now contained on it that may alter legal title to it, or for it to be examined by authoritative experts who might render expert witness opinion that what is purported to be the original note allegedly held by Wells Fargo Bank, N.A. for Freddie Mac is in fact the original note in their possession. While Defendant has complied with the documentation required to initiate foreclosure under Maryland law, the issues of their possession of that right has been clearly disputed in Plaintiff's previous actions in this Court and this Court must decide it.

48.   At this point any further production of such a note copy, if that is what it was, would prove nothing as to any Defendant's claim to actual possession now or to any claim based on the indorsements as these may change at any time after such copy had been made. Defendant is seeking to get the Court to gloss over the whole issue of an instrument indorsed in blank, present possession and proper indorsement still transferring title by possession.

As the Court knows anyone is currently entitled to possession of the indorsed in blank Note. Given the multiple conflicts in the Public Land Records and documents as evidence surrounding the disposition of this loan cited above in this case as to the vast discrepancies in timeframes as to ownership of these instruments; Plaintiff believes that to resolve these conflicts and establish that Defendant Wells Fargo Bank, N.A. for Freddie Mac is the alleged bearer of the instrument and holder of the rights to contract in this disputed claim, pursuant to these facts Plaintiff demands the right to have produced for the Court the original Deed of Trust and Promissory Note for examination by the Plaintiff to determine who actually is now the present alleged legal and actual holder of this debt with standing to seek relief from stay and have foreclosure performed in its name, and the original or certified copy of the

Assignment of Deed of Trust by which Defendant alleges to have come into ownership of the rights of the contract to foreclose under.

49.  MD COMMERCIAL LAW CODE § 1-201(b)*(21) defines "Holder" as the "person in possession of a negotiable instrument....*" MD Code § 1-201(b)*(5) defines "Bearer" as "a person in possession of a negotiable instrument, document of title, or certificated security that is payable to bearer or endorsed in blank." (emphasis added).*

50.  "Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee." Bankruptcy Courts have followed the Uniform Commercial Code. *In Re Investors & Lenders, Ltd.* 165 B.R. 389 (Bkrtcy.D.N.J.1994).

Unequivocally the Court's rule is that in order to prove the "instrument", possession is mandatory.   No possession of the note has been demonstrated by its proven, certified, authenticated production before the Court.

51.  Plaintiff case presumes Defendant has proven they are the note holder which they decidedly have not which clearly places their holding of the note as material fact now in dispute.

52.  Plaintiff did not discover, either, the nature or the extent of this Mistaken and Erroneous Representation perpetrated Plaintiff by the Defendant until a date on or about February 2014. As a proximate result of these actions and those imminently following in foreclosure, Plaintiff will be made to suffer loss thereby in the amount of the market value of the property at the time such spurious sale and Defendants should be enjoined against such sale or order to make a full reconveyance of said property to Plaintiff.

**WHEREFORE,** Plaintiff prays the Court for this relief and that it be so ordered.

**III.**

53.  Yet there is further dispute in question over the status of Freddie Mac regarding this loan and Wells Fargo Bank, N.A. with them even if the above facts were not true and demonstrable to the court.

There is further evidence that Freddie Mac for whom Wells Fargo Bank, N.A. is supposedly acting no longer is legal holder of the note in question.  Plaintiff is now further advised and informed from authoritative information and documentation as herein attached as exhibits cited, as well as from authorized sources of the Securities Exchange Commission, that when Plaintiff's loan was sold to Freddie Mac **if it was and at whatever time** it was subsequently placed into a pool of loans to serve as a security instrument or promissory bond  to back or secure Mortgage Participation Certificates (PC's) being sold to the investing public as is standard practice for all loans to which Freddie Mac comes into ownership of according to these authorities.

As excerpted from the official FREDDIE MAC website:  http://www.freddiemac.com

"Our Business

In 1970, Congress created Freddie Mac with a few important goals in mind:

- Make sure that financial institutions have mortgage money to lend
- Make it easier for consumers to afford a decent house or apartment
- Stabilize residential mortgage markets in times of financial crisis

To fulfill this mission, Freddie Mac conducts business in the U.S. secondary mortgage market – meaning we do not originate loans – and works with a national network of mortgage lending customers. We have three business lines: a Single Family Credit Guarantee business for home loans; a Multifamily business for apartment financing; and an investment portfolio.

***Single-Family Credit Guarantee Business***

In our <u>Single-Family business</u>, <u>we use mortgage securitization to fund millions of home loans every year. Securitization is a process by which we purchase home loans that lenders originate, put these loans into mortgage securities that are sold in global capital markets, and recycle the proceeds back to lenders.</u> This recycling is designed to ensure that lenders have mortgage money to lend.

And as is further corroborated from the authorities referenced above and other

documentation obtainable from FREDDIE MAC, that may be found at

<u>http://www.freddiemac.com/cim/pdf/2011_chapter_2.pdf</u> and

<u>http://www.freddiemac.com/cim/pdf/Form1035.pdf</u>  excerpts attached in **EXHIBIT M**

and **EXHIBIT N**, Freddie Mac Document Custody Procedures Handbook Duties and

Responsibilities March 2011 – 2 Chapter 2 **Compliance and Controls,** the trusts that are

created through  which the  Mortgage Participation Certificates are sold **must be the**

**holder, owner and in possession of <u>all notes and security instruments</u>** on which the

Mortgage Participation Certificates sold rest for security or the trust would be committing

fraud on its investors, standing as further proof that such a pool is the actual repository and

owner of Plaintiff's loan instruments and of all the others they own, no longer Freddie Mac

itself, nor Wells Fargo Bank, N.A., no other legal entity, and therefore Freddie Mac for

whom Wells Fargo Bank, N.A. is supposedly acting no longer has standing, and, if proven,

acts to void the claims of Freddie Mac to be the actual legal, titled owner of this loan or for

Wells Fargo Bank, N.A. to act in any way in their behalf relevant to this loan and to make

claims in this bankruptcy.

54. Plaintiff did not discover, either, the nature or the extent of this Mistaken and Erroneous Representation perpetrated upon Plaintiff by the Defendant until a date on or about February 2014.

As a proximate result of these actions and those imminently following in foreclosure, Plaintiff will be made to suffer loss thereby in the amount of the market value of the property at the time such spurious sale and Defendants should be enjoined against such sale or order to make a full reconveyance of said property to Plaintiff.

**WHEREFORE,** Plaintiff prays the Court for this relief and that it be so ordered.

### SECOND CLAIM FOR RELIEF
### (Declaratory Relief to Determine Extent, Validity and Priority of Lien)
### F.R.B.P. 7001(2) AND 7001(9)

55. Plaintiff restate foregoing allegations as if fully set forth herein.

56. Plaintiff alleges that she holds an interest in the property free and clear of any interest of Defendant in that the lien evidenced by the Deed of Trust and its subsequent assignment has no value since it is wholly unsecured, and that accordingly, the Deed of Trust is null and void.

57. There are no indorsements on the alleged Note or evidence submitted to indicate Freddie Mac claim to ownership. Therefore Wells Fargo can not be entitled to the status of holder in due course with rights of enforcement pursuant to the UCC.

58. An actual controversy exists between the Plaintiff and Defendant with regard to the validity, nature and extent of their interest in the property.

59. It is necessary that the Court declare the actual rights and obligations of the parties and make a determination as to the validity, nature and extent of Defendant interest in the property.

### THIRD CLAIM FOR RELIEF
### (Declaratory Relief to Determine Status of Disputed Claim)
### 11 U.S.C. § 506 F.R.B.P. 7001

60. Plaintiff restates foregoing allegations as if fully set forth herein.

61. At no time relevant hereto did Freddie Mac hold both the Promissory Note and the Deed of Trust. Therefore, Wells Fargo does not have standing to file a proof of claim.

62. Plaintiff asserts that neither Freddie Mac nor Wells Fargo hold a "Perfected" secured claim upon Plaintiff's residence.

63. An actual controversy exists between the Plaintiff and Defendant with regard to the status of its claim as secured or unsecured.

64. It is necessary that this Court declare the actual rights and obligations of the parties and make a determination as to whether the claim is secured or unsecured.

65. Pursuant to 11 U.S.C. § 506(d) the lien is void. Therefore, any claim of Defendant or Freddie Mac should be deemed unsecured and the Deed of Trust void and/or satisfied.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against the Defendants and each of them jointly and severally, as follows:

1. The Court determine that Defendants are not allowed to make a claim pursuant to 11 U.S.C. § 501(a).

2. A determination that none of the Defendant hold both the Promissory Note and Deed of Trust and declare that Defendants are not the person entitled to enforce any claim, Note or alleged debt against Plaintiff.

3.  Instruct Defendants to rescind any and all negative/derogatory information or reporting made to any and all credit bureaus regarding the account.

4.  The Assignment of Deed of Trust authorizes no entity to have authority and or capacity to enforce a trustee sale.

5.  Release all claims by Defendants against Plaintiff.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Respectfully submitted,

Renee L. McCray
109 North Edgewood Street
Baltimore, Maryland  21229
Email:  rlmccray@yahoo.com
(410) 945-2424

## AFFIDAVIT

I, Renee L. McCray, Plaintiff, does hereby certify under the penalties of perjury, that the facts which as set forth in this Amended Complaint, are true and correct to the best of my information, knowledge and belief.

Renee L. McCray

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Amended Complaint was mailed by first-class mail (see attached USPS mailing receipt) on March 17, 2014 to:

Michael S. Barranco
TREANOR POPE & HUGHES, P.A.
500 York Road
Towson, Maryland  21204

Charles R. Goldstein, Trustee
1 East Pratt Street
Suite 800
Baltimore, Maryland  21202

Renee L. McCray

```
                    CARROLL
               BALTIMORE, Maryland
                   212299998
                2303830009 -0099
   03/17/2014    (800)275-8777      10:10:00 AM
```

|                                 | Sales Receipt |               |
| ------------------------------- | ------------- | ------------- |
| Product<br>Description          | Sale Unit<br>Qty  Price | Final<br>Price |

```
BALTIMORE MD 21202 Zone-0                   $0.70
First-Class Mail Letter
  1.60 oz.
Expected Delivery: Tue 03/18/14
                                          =========
 Issue PVI:                                 $0.70

BALTIMORE MD 21202 Zone-0                   $0.70
First-Class Mail Letter
  1.80 oz.
Expected Delivery: Tue 03/18/14
                                          =========
 Issue PVI:                                 $0.70

TOWSON MD 21204 Zone-0                      $3.08
First-Class Mail Large Env
10.40 oz.
 Expected Delivery: Tue 03/18/14
                                          =========
 Issue PVI:                                 $3.08
                                          =========

Total:                                      $4.48

Paid by:
Cash                                        $5.00
Change Due:                                -$0.52
```

Order stamps at usps.com/shop or call
1-800-Stamp24. Go to usps.com/clicknship
to print shipping labels with postage. For
other information call 1-800-ASK-USPS.
*******************************************
*******************************************
Get your mail when and where you want it
with a secure Post Office Box. Sign up for
a box online at usps.com/poboxes.
*******************************************
*******************************************

Bill#: 1000100870079
Clerk: 04

    All sales final on stamps and postage
    Refunds for guaranteed services only
        Thank you for your business
*******************************************
*******************************************
        HELP US SERVE YOU BETTER

    Go to: https://postalexperience.com/Pos

      TELL US ABOUT YOUR RECENT
           POSTAL EXPERIENCE

        YOUR OPINION COUNTS
*******************************************
*******************************************


              Customer Copy

# EXHIBIT "A"

IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

JOHN E. DRISCOLL, III, et al
Substitute Trustees
Plaintiffs

v.                                          Civil Action No.

Renee L. McCray
Defendant(s)

### AFFIDAVIT CERTIFYING OWNERSHIP OF DEBT INSTRUMENT AND ACCURACY OF NOTE SUBMITTED HEREWITH

I HEREBY CERTIFY in compliance with Maryland Code Section 7-105.1(d)(2)(iii) and Maryland Rule 14-207(b)(3) that the debt instrument submitted herewith is a true and correct copy of the Note applicable to the present foreclosure action, that Federal Home Loan Mortgage Corporation is the owner of the loan evidenced by the Note, and that Federal Home Loan Mortgage Corporation has authorized Wells Fargo Bank, N.A. to be the holder of the Note for purposes of conducting this foreclosure action.

I SOLEMNLY AFFIRM under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

Dated this 6th day of November, 2012.

WELLS FARGO BANK, NA

Erinn T. Rochelle
Vice President of Loan Documentation
WELLS FARGO BANK, NA
11/06/2012

005-MD-V2

# EXHIBIT "B"

THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | | |
|---|---|---|
| JOHN E. DRISCOLL, III, ESQ., et al | * | |
| Substitute Trustees | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil Action No. |
| | * | |
| Renee L. McCray | | |
| 109 N Edgewood Street | | |
| Baltimore, MD 21229 | * | |
| Defendant(s) | * | |

## MD. CODE, REAL PROPERTY, § 7-105.1(d)(2)(ii) AND RULE 14-207(b)(2) DEBT AND RIGHT TO FORECLOSE AFFIDAVIT

Affiant is Vice President Loan Documentation, of Wells Fargo Bank, N.A. (hereinafter "Wells Fargo"), the servicer of the mortgage loan that is the subject of the above-styled action. Wells Fargo Bank, N.A., directly or through an agent, has possession of the Promissory Note. Wells Fargo Bank, N.A. is either the original payee of the Promissory Note or the Promissory Note has been duly indorsed. As servicer, Wells Fargo is responsible for the collection of this loan transaction and pursuit of any delinquency in payments. In the regular performance of my job functions, I am familiar with business records maintained by Wells Fargo for the purpose of servicing mortgage loans. These records (which include data compilations, electronically imaged documents, and others) are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are made and kept in the course of business activity conducted regularly by Wells Fargo. It is the regular practice of Wells Fargo's mortgage servicing business to make these records. I hereby certify, on this 20th day of November, 2012, that Renee L McCray defaulted under the loan documents and Plaintiff has the right to foreclose, and the remaining amount due is

The total amount due on said Note through 11/12/2012 is $62,068.39 which breaks down as follows:

| | |
|---|---|
| Principal | $59,618.00 |
| Interest | |
| From 04/01/2012 to 11/12/2012@5.625% | $2,057.29 |
| Pre-acceleration Late Charges | $19.14 |
| Hazard Insurance Disbursements | $0.00 |
| Tax Disbursements | $373.96 |
| Property Preservation | $0.00 |
| PMI\MIP Insurance | $0.00 |
| Other    (specify charges/fees) | $0.00 |
| | |
| Escrow Balance Credit | $0.00 |
| Credit to Borrower | $0.00 |

001-MD-V7



EXHIBIT "B"
Page 1 of 2

Total                                       $62,068.39

Per diem interest in the amount of $9.19 will accrue on the principal from 11/12/2012

    I SOLEMNLY AFFIRM, under the penalty of perjury that the contents of the foregoing paper are true to the best of my knowledge, information and belief.

Wells Fargo Bank, N.A.

*John Smith*

John Smith-Vice President Loan Documentation, Agent of the Secured Party
Wells Fargo Bank, NA
11-20-12

State of North Carolina
County of Mecklenburg

    The foregoing instrument was sworn to and subscribed before me this 20th day of November, 2012, by John Smith_____, who is personally known to me.



*Sherita Simpson*
NOTARY PUBLIC, State of North Carolina
My commission expires: 3/29/2014

001~MD~V7                    EXHIBIT "B"
                             Page 2 of 2

# EXHIBIT "C"

BK 9  8 3 0 PG 0 4 3 8

Return To:

Tri-State Title Company, Inc.
9 Greenwood Place, Ste. 305
Pikesville, MD 21208

Prepared By:
Jasmine Gant
7142 Columbia Gateway Driv
Columbia, MD
21046

——————————— [Space Above This Line For Recording Data] ———————————

Refinance

# DEED OF TRUST

MIN 100024200010323117

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated October 7, 2005 together with all Riders to this document.
(B) **"Borrower"** is Renee L McCray

Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is American Home Mortgage

Lender is a Corporation
organized and existing under the laws of State of New York

DOC  #:322291                           APPL #:0001032311

MARYLAND -Single Family- Fannie Mae/Freddie  Mac UNIFORM INSTRUMENT WITH MERS    Form 3021 1/01

-6A(MD) (0208)
Page 1 of 15        2021 3905.02    Initials:
VMP MORTGAGE FORMS - (800)521-7291

BK 0830 PG 0939

Lender's address is  520 Broadhollow Rd, Melville, NY  11747

(D) "Trustee" is  Douglas Douglas, Connie Iampieri

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  October 7, 2005 .
The Note states that Borrower owes Lender Sixty Six Thousand Five Hundred and
No/100                                                                                        Dollars
(U.S. $66,500.00                         ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  November 1, 2035  .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider      [ ] Condominium Rider                 [ ] Second Home Rider
- [ ] Balloon Rider              [ ] Planned Unit Development Rider    [ ] 1-4 Family Rider
- [ ] VA Rider                   [ ] Biweekly Payment Rider            [ ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

DOC  #:322292                       APPL #:0001032311                      Initials:

-6A(MD) (0005)                       Page 2 of 15                          Form 3021  1/01

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County                              of  BALTIMORE CITY                              :

    [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

See Attached Exhibit A

Parcel ID Number:  0320172281282       which currently has the address of
109 N Edgewood Street                 [Street]
Baltimore         [City], Maryland  21229   [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

DOC  #:322293       APPL #:0001032311

-6A(MD) (0009)       Page 3 of 15     Initials:      Form 3021  1/01

BK 0 4 8 3 0 PG 0 4 4 1

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any

DOC #:322294                    APPL #:0001032311

-6A(MD) (0205)                   Page 4 of 15                    Initials: _____                    Form 3021 1/01

BK 0 830 PG 0942

or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within

DOC #:322295                    APPL #:0001032311

-6A(MD) (0008)                   Page 3 of 15              Initials: _____        Form 3021  1/01

BK 0 8 3 0 PG 0 9 4 3

10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to

DOC  #:322296          APPL #:0001032311

-6A(MD) (0009)                    Page 6 of 15              Initials: _____          Form 3021  1/01

CK 9 h 830 PG 0944

Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys'

DOC #:322297          APPL #:0003032311

-6A(MD) (0009)          Page 7 of 15          Form 3021  1/01

fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

DOC #:322298          APPL #:0001032311

-6A(MD) (0009)          Page 8 of 15          Form 3021  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

DOC #:322299              APPL #:0001032311

-6A(MD) (0009)              Page 9 of 15              Initials: _____              Form 3021  1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

DOC #:322300          APPL #:0001032311

-6A(MD) (0000)          Page 10 of 15          Form 3021 1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection

DOC  #:322331                     APPL #:0001032311

-6A(MD) (0009)                    Page 11 of 15                          Form 3021  1/01

BK 0 3 8 3 0 PG 0 9 4 9

with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the

DOC  #:322302                    APPL #:0001032311

-6A(MD) (0005)                   Page 13 of 15                    Initials:                    Form 3021  1/01

BK 0 K 8 3 0 PG 0 9 5 0

default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of     Five (5.00)     % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

DOC  #:322303                    APPL #:0001032311

-6A(MD) (0009)                    Page 13 of 13                    Initials: _____    Form 3021  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                       Renee L McCray              -Borrower


_____          _____ (Seal)
                                                                   -Borrower


_____ (Seal)   _____ (Seal)
                      -Borrower                                    -Borrower


_____ (Seal)   _____ (Seal)
                      -Borrower                                    -Borrower


_____ (Seal)   _____ (Seal)
                      -Borrower                                    -Borrower


DOC  #:322304              APPL #:0031032311

-6A(MD) (0005)                 Page 14 of 15                    Form 3021  1/01

BK 0 4 8 3 0 PG 0 9 5 2

STATE OF MARYLAND,                    BALTIMORE          County ss:
    I Hereby Certify, That on this    7th      day of October, 2005  , before me, the subscriber, a
Notary Public of the State of Maryland, in and for the   County of Baltimore                ,
personally appeared  Renee L McCray

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.
    AS WITNESS: my hand and notarial seal.
My Commission Expires:   6/11/07
                                   Notary Public

STATE OF    MARYLAND       ,           BALTIMORE                 County ss:
    I Hereby Certify, That on this    7th     day of October, 2005 , before me, the subscriber,
a Notary Public of the State of Maryland   and for the     County of Baltimore              ,
personally appeared    Elisa B. Saradpon

the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the
consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of
money advanced at the closing transaction by the secured party was paid over and disbursed by the party or
parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds
in the closing transaction or their respective agent at a time not later than the execution and delivery by the
Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties secured and
duly authorized to make this affidavit.
    AS WITNESS: my hand and notarial seal.
My Commission Expires:   6/11/07
                                   Notary Public

This is to certify that the within instrument was prepared by Jasmine Gant, Closer for the lender.

                    FOR:   American Home Mortgage
                    BY:    Jasmine Gant, Closer

DOC #:322305              APPL #:0001032311

-6A(MD) (0000)            Page 15 of 15                              Form 3021  1/01

BK 0830 PG 0953

# Refinance Affidavit

We/I, the undersigned mortgagor(s) after having been dully sworn to in accordance with the law, so hereby declare under penalties of perjury, the following:

1. That the undersigned is/are the original mortgagor(s).
2. That the mortgage property is my/our principal residence.
3. The amount of unpaid principal balance of the original mortgage/deed of trust that is being refinanced is $ 46,373.01          which Deed of Trust is recorded in Liber ____4414____ Folio ___212___.

IN WITNESS WHEREOF, we/I hereunto affix our hand(s) and seal(s) this
OCT 0 7 2005          .

_____
Renee L. McCray

_____

SUBSCRIBED    AND    SWORN    to    before    me    this
OCT 0 7 2005          .



_____
Notary Public

My commission expires: 6/11/07

BK 0 F: 8 3 0 PG 0 9 5 4

File No. 7781

## Exhibit "A"

### Legal Description

2275-F

Beginning for the same on the southeast side of Edgewood Street at a point distant 89.26 feet northeasterly from the corner or intersection formed by the northeast side of Caton Avenue and the southeast side of Edgewood Street, said point of beginning being also at a point in line with the center line of a partition wall erected between the house on the lot now being described and the house on the lot adjoining thereto on the southwest; and running thence northeasterly and binding on the southeast side of Edgewood Street 19.5 feet to a point in line with the center line of another partition wall erected between the house on the lot now being described and the house on the lot adjoining thereto on the northeast; thence running to and through the center of said second mentioned partition wall and at about right angles to Edgewood Street 90 feet to the northwest side of a 15 foot alley there laid out; thence running southwesterly and binding on the northwest side of a said 15 foot alley with the use thereof in common with others 19.5 feet to a point in line with the center line of the partition wall first herein mentioned; and thence running northwesterly to and through the center of said first mentioned partition wall 90 feet to the place of beginning. The improvements thereon being known as No. 109 Edgewood Street (a/k/a 109 North Edgewood Street).

Landtech Support Services Form 8/92 912.LBS

# EXHIBIT
# "D"

LIBER I 4405 PAGE 061

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

## CORPORATE ASSIGNMENT OF DEED OF TRUST

REDACTED

Baltimore (City), Maryland
"MCCRAY"

MERS #: 100024200010323117  SIS #: 1-888-679-6377

Date of Assignment: June 26th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
AMERICAN HOME MORTGAGE, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501,
1901 E VOORHEES ST STE C., DANVILLE, IL 61834
Assignee: WELLS FARGO BANK, NA at 1 HOME CAMPUS, DES MOINES, IA 50328

Executed By: RENEE L MCCRAY. To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
AS NOMINEE FOR AMERICAN HOME MORTGAGE, ITS SUCCESSORS AND ASSIGNS
Date of Deed of Trust: 10/07/2005 Recorded: 10/14/2005  in Book/Reel/Liber: 06830 Page/Folio: 0938
in the County of Baltimore (City), State of Maryland.

Property Address: 109 N  EDGEWOOD STREET, BALTIMORE, MD 21229  − 2275 − F

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said assignor hereby assigns unto the above-named
assignee, the said Deed of Trust having an original principal sum of $66,500.00 with interest, secured
thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the
full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor
hereby grants and conveys unto the said assignee, the assignor's beneficial interest under the Deed of
Trust.
   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said assignee forever,
subject to the terms contained in said Deed of Trust.

   IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above
written:

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN HOME
MORTGAGE, ITS SUCCESSORS AND ASSIGNS
On  6/28/12

By: _____
_____ Joel Altringer _____, Assistant
Secretary

EXHIBIT "D"
Page 1 of 2

LIBER-I1 4 4 0 5 PAGE 0 6 2

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Iowa
COUNTY OF Polk

On 6·28·12 , before me, Theresa Larson , a Notary Public in and for
Polk in the State of Iowa, personally appeared Joel Altringer , Assistant Secretary,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

THERESA LARSON
Commission Number 771339
My Commission Expires
January 24, 2015

Theresa Larson

Notary Expires: 1 /24/15

(This area for notarial seal)

"PK1"PK1WFEM"06/29/2012 09:07:07 AM" WFEM01WFEMA000000000000C00568158" MDBALT2" MDSTATE_TRUST_ASSIGN_ASSN "MS2WFE8"

EXHIBIT "D"
Page 2 of 2

# EXHIBIT
# "E"

# MERS

# MERS Certifying Officers & the Corporate Resolution Management System

Richard Anderson

Jay Arneja

Process Loans, Not Paperwork[SM]



EXHIBIT
Page 1 of 30



# MERS Corporate Resolution

- Introduction
- Purpose of resolution
- Usage and authority
- Corporate resolution vs. power of attorney

EXHIBIT
Page 2 of 30



Process Loans, Not Paperwork™

# Sample Corporate Resolution

Be it Resolved that the attached list of candidates are officers of <u><insert name of company></u> a Member of Mortgage Electronic Registration Systems, Inc. (MERS), and are hereby appointed as assistant secretaries and vice presidents of MERS, and, as such, are authorized to:

(1) release the lien of any mortgage loan registered on the MERS System that is shown to be registered to the Member;

(2) assign the lien of any mortgage loan naming MERS as the mortgagee when the Member is also the current promissory note-holder, or if the mortgage loan is registered on the MERS System, is shown to be registered to the Member;

(3) execute any and all documents necessary to foreclose upon the property securing any mortgage loan registered on the MERS System that is shown to be registered to the Member, including but not limited to: (a) substitution of trustee on Deeds of Trust, (b) Trustee's Deeds upon sale on behalf of MERS, (c) Affidavits of Non-military Status, (d) Affidavits of Judgment, (e) Affidavits of Debt, (f) quitclaim deeds, (g) Affidavits regarding lost promissory notes, and (h) endorsements of promissory notes to VA or HUD on behalf of MERS as a required part of the claims process;

(4) take any and all actions and execute all documents necessary to protect the interest of the Member, the beneficial owner of such mortgage loan, or MERS in any bankruptcy proceeding regarding a loan registered on the MERS System that is shown to be registered to the Member, including but not limited to: (a) executing Proofs of Claim and Affidavits of Movant under 11 U.S.C. Sec. 501-502, Bankruptcy Rule 3001-3003, and applicable local bankruptcy rules, (b) entering a Notice of Appearance, (c) vote for a trustee of the estate of the debtor, (d) vote for a committee of creditors, (e) attend the meeting of creditors of the debtor, or any adjournment thereof, and vote on behalf of the Member, the beneficial owner of such mortgage loan, or MERS, on any question that may be lawfully submitted before creditors in such a meeting, (f) complete, execute, and return a ballot accepting or rejecting a plan, and (g) execute reaffirmation agreements;

Must be officer of your company

Limitation: may only execute documents for loans registered to your company

Para. 3 thru 7 break out specific types of documents a MERS officer may execute



**MERS**
Process Loans, Not Paperwork™

EXHIBIT **1**
Page 3 of 30

# Sample Corporate Resolution (cont.)

(5) take any and all actions and execute all documents necessary to refinance, subordinate, amend or modify any mortgage loan registered on the MERS System that is shown to be registered to the Member.

(6) endorse checks made payable to Mortgage Electronic Registration Systems, Inc. to the Member that are received by the Member for payment on any mortgage loan registered on the MERS System that is shown to be registered to the Member;

(7) take any such actions and execute such documents as may be necessary to fulfill the Member's servicing obligations to the beneficial Owner of such mortgage loan (including mortgage loans that are removed from the MERS System as a result of the transfer thereof to a non-member of MERS).

I, William C. Hultman, being the Corporate Secretary of Mortgage Electronic Registration Systems, Inc., hereby certify that the foregoing is a true copy of a Resolution duly adopted by the Board of Directors of said corporation effective as of the <insert day> day of <insert month>, 2009 which is in full force and effect on this date and does not conflict with the Certificate of Incorporation or By-Laws of said corporation.

_____

William C. Hultman, Secretary

Broad Authority





Process Loans, Not Paperwork™



# MERS Certifying Officer

- Role and responsibilities
- Eligibility
  - Membership Rule 3
  - Certification required



Process Loans, Not Paperwork™

# Corporate Resolution Management System (CRMS) & Certification Process

- When: April 19, 2010

- Who: members that have or will have an active MERS Corporate Resolution

- What: web-based application to facilitate the processing of member requests for a MERS Corporate Resolution and updates to their MERS certifying officers list







MERS
Process Loans, Not Paperwork™

# Project Managers

- Administrative access is granted to MERS project manager for each member
  - Request a new corporate resolution
  - Request updates to MERS certifying officer list
  - Update contact information for certifying officers
  - Order MERS corporate seals

EXHINIT "4"
Page 7 of 30



**MERS**®
Process Loans, Not Paperwork™



# Certifying Officers

- Certification access to certifying officers
  - *Review MERS Certifying Officer Primer*
  - Take certification quiz
  - Renew certification yearly
  - Special announcements




Process Loans, Not Paperwork™

MERS®

# Certification

- Review primer and take certification quiz
  - Information on roles and responsibilities of certifying officers
  - Ensures basic understanding of MERS
  - Quiz consists of 10 randomly selected questions
  - Must answer eight out of 10 questions correctly to pass
  - Renew annually



EXHIBIT "__"
Page 9 of 30



MERS

Process Loans, Not Paperwork™



# Sample Certification Q & A's

- What title should a MERS certifying officer use when executing documents as an officer of MERS?

- Where is MERS incorporated?

- True or false: A MERS certifying officer has authority to accept service of process on behalf of MERS.



EXHIBIT
Page 10 of 30



MERS

Process Loans, Not Paperwork™

# CRMS: A Web-Based Application

- Simple, user-friendly method to maintain your certifying officer list

- Email notification to project manager with logon credentials to access CRMS

- Leads to centralized management by project manager



EXHIBIT
Page 11 of 30



MERS

Process Loans, Not Paperwork™

# Login Page

Welcome to the MERS CR Portal - Windows Internet Explorer

File   Edit   View   Favorites   Tools   Help

http://crm.mersinc.org/

Welcome to the MERS CR Portal

**MERS**

## Corporate Resolution Management System

Home Page | Contact Us | Location | Privacy Policy | Site Map

User Name:

Password:

Log In

Forgot your password?

Log in credentials
provided via email.

Home Page | Contact Us | Location | Privacy Policy | Site Map

Copyright 2010 by MERSCORP, Inc. 1-800-646-MERS (6377)
Other products or company names are or may be trademarks or registered trademarks and are the property of their respective holders.

Done

Internet

100%

# Profile Page For Project Manager



http://mrs.merinc.org/Pages/Start.aspx - Windows Internet Explorer

http://mrs.merinc.org/Pages/Start.aspx

http://mrs.merinc.org/Pages/Start.aspx

Welcome to the MERS

## Corporate Resolution Management System

### Your Activities

**As Project Manager**

| Organization | Type | Status |
|---|---|---|
| Jay Company | o Create New Corporate Resolution | New |
| Data Mortgage Inc Corp | Corporate Resolution | Pending |
| Meadowbrook Mortgage Corporation | Corporate Resolution | Approved |
| Nebraska Mortgage Co. LLC | Corporate Resolution | Draft |

**As Certifying Officer:**

**CLICK HERE TO TAKE THE CERTIFYING OFFICER EXAM NOW!**

Download PDF Printer

### Announcements

| March, 31 | Welcome to the MERS Corporate Resolution Management System. |
|---|---|
| March, 31 | UAT Testing Week |

A Project Manager can manage activities in central location as Project Manager and Certifying Officer.

Log Out | Change Password

Home Page | Contact Us | Location | Privacy Policy | Site Map

Top

Internet     100%

EXHIBIT
Page 13 of 30

# Manage Certifying Officers



# Edit Certifying Officer



Edit Certifying Officer profile, Remove them from a Corporate Resolution, or resend their credentials.

# Sample Test Question



# Certification



**As Certifying Officer!**

| CORP. | Resolution | | Approved |
|-------|-----------|--|----------|
| Meadowbrook Mortgage Corporation | - Corporate Resolution | | |
| Nebraska Mortgage Co LLC | - Corporate Resolution | Draft | |

## CLICK HERE TO TAKE THE CERTIFYING OFFICER EXAM NOW!

Download PDF Printer

**Certifying Officer Exam**

Certifying Officer Exam

**Test Results**

You have passed the exam previously and will be asked to retake it once it expires.

Log Out | Change Password

Certification must be renewed annually.

TOP

Home Page | Contact Us | Location | Privacy Policy | Site Map

Copyright 2010 by NEBSCORP, Inc. 1-800-646-NEBS (6377)
Other products or company names are or may be trademarks or registered trademarks and are the property of their respective holders.





Q & A

MERS
Process Loans, Not Paperwork™

EXHIBIT
Page 18 of 30

# Sample Question

- Where is MERS incorporated?

a. California

b. Delaware

c. Michigan

d. Virginia





MERS

Process Loans, Not Paperwork™



# Answer

- Where is MERS incorporated?

a.  California

**b.  Delaware**

c.  Michigan

d.  Virginia

# Sample Question

- True or False: MERS assignments should also reference a transfer of the corresponding promissory note (e.g., " . . . together with Note or other evidence of indebtedness . . .")





# Answer

- True or <u>False</u>: MERS assignments should also reference a transfer of the corresponding promissory note (e.g., "... together with Note or other evidence of indebtedness ...")





Process Loans, Not Paperwork™

# Sample Question

- When is a MERS Certifying Officer's authority to execute a MERS document terminated?

  a. Member resigns its membership;

  b. Officer is no longer employed by Member organization;

  c. Member organization no longer has an interest in the loan;

  d. Upon notice from MERS Corporate;

  e. All of the above.




MERS
Process Loans, Not Paperwork™

# Answer

- When is a MERS Certifying Officer's authority to execute a MERS document terminated?

  a. Member resigns its membership;

  b. Officer is no longer employed by Member organization;

  c. Member organization no longer has an interest in the loan;

  d. Upon notice from MERS Corporate;

  e. **All of the above.**





MERS
Process Loans, Not Paperwork™

# Sample Question

- Which of the following is not a method in which MERS accepts service of process?

  a. Service delivered to MERS' corporate office in VA;

  b. Service delivered to MERS' P.O. Box in Flint, MI;

  c. Service delivered to a MERS Certifying Officer;

  d. Service delivered to a MERS Registered Agent.







MERS

Process Loans, Not Paperwork™

# Answer

■ Which of the following is not a method in which MERS accepts service of process?

a. Service delivered to MERS' corporate office in VA;

b. Service delivered to MERS' P.O. Box in Flint, MI;

c. **Service delivered to a MERS Certifying Officer;**

d. Service delivered to a MERS Registered Agent.

EXHIBIT "H"
Page 26 of 30





# Sample Question

- True or False: Mortgage rights are electronically assigned on the MERS® System





MERS
Process Loans, Not Paperwork™

# Answer

- True or <u>False</u>: Mortgage rights are electronically assigned on the MERS® System





**MERS**

Process Loans, Not Paperwork™

# Sample Question

- **True or False: MERS I-Registration is an information only registration of a loan; MERS is not a party to the mortgage loan.**





**MERS**

Process Loans, Not Paperwork™

# Answer

- **<u>True</u> or False: MERS I-Registration is an information only registration of a loan; MERS is not a party to the mortgage loan.**






Process Loans, Not Paperwork™

EXHIBIT E
Page 30 of 30

# EXHIBIT
# "F"



# IOWA SECRETARY OF STATE
# *Matt Schultz*

| Home | Business Services | Search Databases | Online Filing | Elections | Notaries | Nonprofits | Youth |

Home » Search Databases » Notary » Results » Details

## Notary Details

print

Commission Number: 771334

## Home

**Name**

JOEL ALTRINGER

**Address**                                **Address 2**

**City, State Zip**

**Phone**

## Business

**Name**

WELLS FARGO HOME MORTGAGE

**Address**                                **Address 2**

475 SW 5TH ST

**City, State Zip**

DES MOINES, IOWA 50309

**Phone**

(515) 697-5413

## Additional

Notary Information

| Original Commission | Issue Date | Expiration Date |
|---|---|---|
| 1/24/2012 | 1/24/2012 | 1/24/2015 |
| **Type** | **Languages** | |
| RESIDENT | | |
| **Electronic Notarization** | **Electronic Technology Used** | |
| NO | | |

## History

Notary History

Secretary of State
First Floor, Lucas Building
321 E. 12th St

**STAY CONNECTED**

   

**VOTER FRAUD HOTLINE**
**1–888–SOS–VOTE**


MILITARY VOTERS ›

 
Help!
**HOW CAN THE SECRETARY HELP YOU?**


**NEWS ROOM**


**CONSTITUENT SERVICES**

**FEATURED RESOURCES**

QUICK LINKS    ONLINE SERVICES    SEARCH

• Am I Registered to Vote in Iowa?
• Track Your Absentee Ballot
• Request an Absentee Ballot
• IASourceLink
• Business Entity Forms & Fees
• Business Entities Search
• UCC Search

**JOIN OUR MAILING LIST**

Email Address  

Home | State of Iowa | Sitemap | Disclaimer | Contact Us
sos@sos.iowa.gov | (515) 281-5204

# EXHIBIT
## "G"

8 0 0 4 5 8 3
Tx:4003702
**2012-09540**
RECORDER JOHN SCIORTINO
POTTAWATTAMIE COUNTY, IA
FILE TIME: 06/29/2012 2:09:52 PM
REC: 10.00AUD: T TAX:
RMA: 1.00ECM: 1.00

R Fee _10.00_

A Fee _____

T Tax _____

Prepared By: Britney N Howard, WELLS FARGO BANK, N.A. 1 HOME CAMPUS, MAC X2598-015, DES MOINES, IA 50328-0001 1-866-234-8271

Return By Mail To:
DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018                    **RETURN ENVELOPE**
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

## CORPORATE ASSIGNMENT OF MORTGAGE

Pottawattamie, Iowa
"DAY"

MERS #: 100104000183023657 SIS #: 1-888-679-6377

Date of Assignment: June 22nd, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COMMERCIAL FEDERAL BANK, FEDERAL SAVINGS BANK, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST STE C., DANVILLE, IL 61834
Assignee: WELLS FARGO BANK, NA at 1 HOME CAMPUS, DES MOINES, IA 50309

Executed By: PATRICIA A DAY, A SINGLE PERSON AND ROBERT L SHERRICK, A SINGLE PERSON
To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COMMERCIAL FEDERAL BANK, FEDERAL SAVINGS BANK, ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 01/03/2005 Recorded: 01/13/2005 in Book/Reel/Liber: 105 Page/Folio: 13122 In the County of Pottawattamie, State of Iowa.

Property Address: 1065 WATERS EDGE CT, CARTER LAKE, IA 51510

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $196,000.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COMMERCIAL FEDERAL BANK, FEDERAL SAVINGS BANK, ITS SUCCESSORS AND ASSIGNS
On _6/=6/12_

By: _____
      Joel Altringer          , Assistant
Secretary

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Iowa
COUNTY OF Polk

On 6·26·12 , before me, Kou Phongphetpannha , a Notary Public in and for Polk in the State of Iowa, personally appeared Joel Altringer , Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Kou Phongphetpannha
Notary Expires: 01/24/15

KOU PHONGPHETPANNHA
Commission Number 771332
My Commission Expires
January 24, 2015

(This area for notarial seal)

EXHIBIT "7"
Page 2 of 2

# EXHIBIT "H"



Freddie Mac
How to Get Help with Your Mortgage

# Yes. Our records show that Freddie Mac is the owner of your mortgage and it was acquired on November 14, 2005. This date is also referred to as the Freddie Mac settlement date.

You may be eligible for the Home Affordable Refinance Program (HARP) if your loan was acquired by Freddie Mac on or before May 31, 2009.

## What to Do Next

1. **For help with your mortgage, contact your lender and let them know you would like to pursue assistance through the federal Making Home Affordable (MHA) program.**
   a. Your lender, the company to which you make your mortgage payments (also referred to as a mortgage servicer), can help you determine if you are eligible for the options under MHA.
      - If you are current on your mortgage payments, but have been unable to refinance because you have little or no equity in the home, HARP may help you obtain a lower interest rate or more stable mortgage.
      - If you are behind in making your mortgage payments or believe you may soon fall behind, a Home Affordable Modification may help you obtain more affordable mortgage payments.
      - If it is not realistic for you to keep your home, a **short sale** or **"deed-in-lieu of foreclosure"** may help you transition to more affordable housing. Learn more about our streamlined short sale.

   Freddie Mac is working with its lenders to offer these solutions to eligible borrowers with Freddie Mac-owned mortgages. *Because Freddie Mac does not work directly with consumers, you will need to work with your lender to determine your best foreclosure prevention option.*

    b.  **If you are not eligible for MHA**, don't give up! Ask your lender about <u>other options</u> to make your payments more affordable or to avoid foreclosure. There are other options available for homeowners with Freddie Mac-owned mortgages that are available through your lender.

2.  **If you are unable to reach your lender, call a U.S. Department of Housing & Urban Development (HUD)-certified housing counselor at 1-800-569-4287 or <u>visit the web site</u> to find a housing counselor in your area.**

Housing counselors can help you contact and work with your lender to get help with your mortgage – free of charge

# Support Information

- **Be informed.** Visit our <u>Avoiding Foreclosure Resource Center</u> for information and guidance on alternatives to foreclosure, working with your lender, avoiding fraud and more.
- **Be patient and diligent.** Lenders are working hard to get to every call and sometimes it takes longer than you expect.
- **Get prepared.** Before you call your lender, here's what you'll need for <u>your conversation.</u>

Learn more about the options available to you under <u>MHA</u>.

Thank you for contacting Freddie Mac. One of our top priorities is making sure homeowners with Freddie Mac-owned mortgages are able to get proper help and understand all options available to them during this difficult time.

<u>En Español</u>

Avoiding Foreclosure Resources

- <u>Alternatives to Foreclosure</u>
- <u>Working with Your Lender</u>
- <u>Who to Contact for Help</u>
- <u>Avoiding Fraud</u>

Steps to Get Started with HARP

1. See if Freddie Mac Owns Your Loan
2. <u>Learn More About HARP</u>
3. <u>Check Your Eligibility for HARP</u>
4. <u>Get Prepared and Call Your Lender</u>
5. <u>Consider Another HARP-Participating Lender</u>

© Freddie Mac

# EXHIBIT
## "I"



**Wells Fargo Home Mortgage**
P.O. Box 10368
Des Moines, IA 50306-0368

November 22, 2011

*Rec'd*
*Fri., Dec. 2, 2011*

Renee L McCray
109 N Edgewood St
Baltimore, MD 21229-3021

Dear Renee L McCray:

RE:    Loan Number 708-0199507104

Wells Fargo Home Mortgage (WFHM) received an inquiry regarding the above referenced mortgage loan.  Therefore, I will be addressing your concerns.

As per your request, enclosed is a copy of the executed Note. Please be advised that Wells Fargo Home Mortgage does not disburse original documents.   However, Wells Fargo Home Mortgage does have a valid loan and lien on this property. I have also enclosed copy of the Security Instrument for your reference.

All inquiries and concerns should be addressed with us as the servicer of your loan.  The investor/note holder for this loan is Federal Home Loan Mortgage Corporation, a government agency and their address is:

Freddie Mac
8200 Jones Branch Drive
McLean, VA 22102-3110

Although we are providing this information, the government agency will more than likely refer you back to us to answer any questions about the loan, or the servicing of the loan.

Any documents or requested information not provided in this letter is due to the request being too broad to determine specific information needed, or are considered to be proprietary information of Wells Fargo Home Mortgage and will not be provided at this time without a subpoena.  Additional information is available by calling our Subpoena Line at (240) 586-8269.

If you have any additional questions or need clarification regarding the information provided, please contact me directly at (877) 491-0707, extension 65118.  I am available to assist you Monday through Friday, 8:30 a.m. to 5:00 p.m., Eastern Standard Time.

Sincerely,

Michael M Malm
Written Customer Contact

Enclosures

This communication is an attempt to collect a debt and any information obtained will be used for that purpose.  However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt as this company has a security interest in the property and will only exercise its rights against the property.

WC403/sck/ge123654

EXHIBIT 
Page 1 of 1

**Together we'll go far**

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801



# EXHIBIT
# "J"

# NOTE

October 7, 2005         Pikesville         Maryland
[Date]               [City]              [State]

109 N Edgewood Street, Baltimore, MD  21229
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.$ 66,500.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is American Home Mortgage

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     5.625 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on   December 1, 2005     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   November 1, 2035     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at     PO Box 660029, Dallas, TX  75266-0029
                   or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S.$ 382.91

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

DOC #:316691           APPL #:0001032311
MULTISTATE FIXED RATE NOTE-Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3200 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3



**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial Interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Renée L. McCray_ (Seal)
Renee L McCray                    -Borrower

_____ (Seal)          _____ (Seal)
                    -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                    -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                    -Borrower                                    -Borrower

PAY TO THE ORDER OF
Wells Fargo Bank, N.A.

[Sign Original Only]

WITHOUT RECOURSE
PAY TO THE ORDER OF
Wells Fargo Bank, N.A.

By _____
Lori K. Venegoni
Vice President Loan Documentation

DOC #:316691          APPL #:9001032311          Form 3200 1/01
                      Page 3 of 3

# EXHIBIT "K"



January 10, 2012


Renee L. McCray
109 N. Edgewood Street
Baltimore, MD 21229-3021

Dear Renee L. Mccray:

RE:    Loan Number 708-0199507104
       Property Address: 109 N. Edgewood Street, Baltimore MD 21229

I am responding on behalf of Wells Fargo Home Mortgage (WFHM) senior management to your complaint filed with the Consumer Financial Protection Bureau (CFPB) and to correspondence received directly from you in our office on December 16 and December 27, 2011.

It has been a pleasure being your single point of contact and working with you regarding your recent mortgage account inquiry. The following information is being provided as a follow-up regarding the resolution discussed in our recent telephone conversation on January 10, 2012.

Our records indicate that WFHM received a similar issue regarding your mortgage account directly from you on November 29, 2011. Enclosed is our response sent to you on December 15, 2011. This previous correspondence also addresses the matters you presented in your recent correspondences.

I would first like to provide some background information to ensure that clarity is established regarding the terms of your loan as well as our processes. At the closing of your loan, you executed a Deed of Trust, which secures the named property as collateral for the loan. The Deed of Trust names Renee L. McCray as the 'Borrower' or Trustor, American Home Mortgage as the 'Lender'. You have been provided a copy of the Deed of Trust and the Note, as well as any additional riders in our enclosed response dated December 15, 2011.

The Deed of Trust provides for the terms and conditions of the loan, including the right to sell the Note or change the loan servicer. Please refer to Page 11, Item 20, of the security instrument for additional information. In addition, I would like to reaffirm that the sale of a loan on the secondary market is common practice within the mortgage industry; however, unless the sale also involves the transfer of the loan servicing rights, it is usually seamless to the Borrower.

The loan was sold on the secondary market to Federal Home Loan Mortgage Corporation, known as Freddie Mac, on November, 14, 2005: however, the servicing rights have been maintained by WFHM since we acquired the loan from American Home Mortgage on October 25, 2008. This sale in no way affects or fulfills your obligation to repay the debt you incurred by signing the Note and Deed of Trust. In addition, as the servicing agent, all correspondence related to the loan must be directed to WFHM and we will respond on behalf of the investor.

EX003/BRC/co577850



McCray
January 10, 2012
Page 2

Mortgage Electronic Registration System (MERS) holds the mortgage on behalf of the investor and servicer until the loan is paid in full. Any changes to the servicing and investor on the loan are tracked through MERS, as assignments are no longer needed. WFHM has a responsibility to service your loan based on the Note and security instrument signed at loan closing.

As of the date of this letter, your mortgage loan is active and has an unpaid principal balance of $60,026.92. Your loan is currently due for the January 1, 2012, monthly mortgage payment.

Finally, as previously advised, any information requested that was not provided, either does not apply to a mortgage loan or is considered proprietary and will not be provided without a subpoena.

If you have any additional questions regarding the content of this letter, please contact me directly at (877) 218-4356, extension 20520. I am available to assist you Monday through Friday, 7:30 a.m. to 4:30 p.m., Central Time.

Sincerely,

Kristopher Peterson
Executive Mortgage Specialist, Office of Executive Complaints

Enclosure(s)

CC/Enc:     Consumer Financial Protection Bureau
            Reference No. 111228-000090

EX003/BRC/co577850

# EXHIBIT
## "L"

# NOTE

October 7, 2005                    Pikesville                    Maryland
[Date]                            [City]                        [State]

109 N Edgewood Street, Baltimore, MD  21229
                              [Property Address]

CERTIFIED COPY

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.$ 66,500.00                 (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is American Home Mortgage

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled
to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate
of          5.625 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of
this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on   December 1, 2005   . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before
Principal. If, on  November 1, 2035          , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at    PO Box 660029, Dallas, TX  75266-0029
                                        or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S.$ 382.81

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to
the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the
Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the
Note Holder agrees in writing to those changes.

DOC #:316691                              APPL #:0001032311
MULTISTATE FIXED RATE NOTE–Single  Family– Fannie  Mae/Freddie  Mac UNIFORM INSTRUMENT

-5N (0005)                    Form 3200 3/99
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                   Initials:

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Renee L. McCray_ (Seal)
Renee L McCray                    -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

*[Sign Original Only]*

DOC #:316693
-5N (0000)

APPL #:0001032311
Page 3 of 3

Form 3200 1/01

# EXHIBIT "M"

http://www.freddiemac.com/cim/pdf/2011_chapter_2.pdf

**Duties and Responsibilities** Freddie Mac Document Custody Procedures Handbook Duties and Responsibilities March 2011 2 Chapter 2 **Compliance and Controls** The Document Custodian must certify the Notes and assignments delivered by a Seller/Servicer and *hold them in trust for us. Document Custodians must certify and safeguard Notes and assignments as required by the Guide, Form 1035 and this Handbook and adhere to the highest professional and ethical standards.* In order to protect Borrower privacy, Document Custodians must not release original documents, copies of documents, or any information about a Borrower or a Mortgage held in custody for Freddie Mac to anyone except Freddie Mac or the Servicer, even if the person asking is the Borrower or someone claiming to be the Borrower. If the person is claiming to be the Borrower, you should direct him or her to the current Servicer. Because of periodic reporting requirements relating to certain mortgage-backed securities, the Seller or a previous Servicer of a Mortgage may request loan-level information; you must direct all such inquiries to the current Servicer. Please contact Document Custodial Operations (DCO) if you have any questions regarding Borrower privacy. Pursuant to Form 1035, Freddie Mac may, with or without prior notice, perform an on-site audit that relates to Notes and assignments held for Freddie Mac, on the following:
- All records and documents held by a Document Custodian,
- The vault itself (facilities, security, etc.), and/or
- The Document Custodian's policies and procedures relating to the custodial functions.

http://www.freddiemac.com/cim/pdf/Form1035.pdf

Custodian Number 1
Custodial Agreement Number
____1
Seller/Servicer Number 1
Self ___ Affiliated 3rd Party __Unaffiliated 2
**CUSTODIAL AGREEMENT: SINGLE-FAMILY MORTGAGES**
THIS CUSTODIAL AGREEMENT, dated as of _____, 20 __3 (the "Agreement"), is by and among Freddie Mac, _____4, as custodian ("Custodian"), and 5, as seller and/or servicer ("Seller/Servicer").
W I T N E S S E T H : WHEREAS, Freddie Mac and Seller/Servicer are parties to certain Purchase Documents pursuant to which Seller/Servicer sells and/or agrees to sell Mortgages to Freddie Mac, or services and/or agrees to service Mortgages for Freddie Mac;
WHEREAS, pursuant to the Purchase Documents, Seller/Servicer will, on or before each Delivery Date, deliver or cause to be delivered to Custodian (i) the Notes relating to such Mortgages, endorsed in blank as required by Freddie Mac's *Single-Family Seller/Servicer Guide* (the "Guide"), (ii) the Assignments relating to such Mortgages, (iii) certain data, using either Freddie Mac's Selling System or MIDANET®, and (iv) for Mortgages delivered through MIDANET®, a completed Form 1034, or for Mortgages delivered through the Selling System, a completed Form 1034 or Cover Sheet for Selling System;

EXHIBIT "N"
Page 1 of 3

WHEREAS, Custodian shall accept delivery of the Notes and any Assignments on Freddie Mac's behalf in accordance with the terms and conditions of this Agreement;

WHEREAS, Freddie Mac, Seller/Servicer and Custodian desire to set forth the terms and conditions for the deposit and custodianship of the original Notes for Mortgages sold to and serviced for Freddie Mac.

NOW, THEREFORE, in consideration of the premises, the covenants herein set forth, and other good and valuable consideration, receipt and sufficiency of which are hereby acknowledged, Freddie Mac, Custodian and Seller/Servicer agree as follows:

Section 1: Definitions. Capitalized terms used herein have the meanings ascribed to them in the Purchase Documents, including (without limitation) the Guide; provided

[1] Freddie Mac will complete this blank or, if Custodian has been assigned a Custodian Number, Custodian must insert this number when it executes this Agreement.

[2] Seller/Servicer, indicate a relationship with Custodian by initialing the appropriate space; Custodian, confirm the relationship by initialing the appropriate Section 2(b) below.

[3] Freddie Mac will complete this blank.

[4] Insert the complete legal name of Custodian.

[5] Insert the complete legal name of Seller/Servicer and its Freddie Mac Seller/Servicer number. Custodial Agreement: Single-Family Mortgages Page 2 of 13 Freddie Mac Form 1035 (rev. 2/08.2)

that the following terms are defined for purposes of the custodial relationship contemplated by this Agreement:

"Assignments" means all intervening assignments and instruments necessary to assign the security instruments to Freddie Mac; if, pursuant to Section 18.1 of the Guide, the Seller/Servicer has elected to hold the Assignments in its Mortgage files, it need not deliver Assignments to the Custodian but must provide Custodian with evidence of that election.

"Form 1034" means a Custodial Certification Schedule in any format (hardcopy or electronic), including without limitation Forms 1034, 1034A, 1034B, 1034E, 1034S, 1034SM, or Form 1034T, which identifies the Notes delivered to Custodian.

*"Notes", for purposes of this Agreement,* means the original notes and any other instruments evidencing the indebtedness secured by the security instruments, along with the original riders, powers of attorney, and/or other modifying instruments to the original notes (e.g., modification, conversion, assumption of indebtedness or release of liability agreements); references to "Notes" may also include Assignments and any supplemental or additional documents required to be maintained in the Custodian's Note file, as the context requires or permits.

(g) Release of Documents. Custodian shall release Notes only pursuant to Section 18.6(e) of the Guide. Absent manifest error, Custodian may rely on information received from Seller/Servicer in the Form 1036. Seller/Servicer shall hold in trust and for the sole benefit of Freddie Mac all Notes released to it.

Section 5. Transfers of Servicing.

(a) In the event that Seller/Servicer transfers servicing of some or all of the Mortgages, such transfer shall be subject to approval under, and conducted pursuant to, Section 18.4(d) and other relevant sections of the Guide.

(b) If Seller/Servicer transfers the servicing for some or all of the Mortgages for which Custodian holds the Notes, then Custodian shall cooperate with Seller/Servicer and

DCO or the transferee seller/servicer's custodian to transfer custody of the Notes and any Assignments pursuant to the Guide and Section 2(d) above.

(c) No later than 30 days after the effective date of a transfer of servicing, the Notes and any Assignments relating to the affected Mortgages must be moved. If the transferee seller/servicer uses a document custodian, the Notes and Assignments must be moved to the transferee seller/servicer's custodian. If the transferee seller/servicer does not use a document custodian, the Notes must be moved to DCO and the Assignments moved to the transferee seller/servicer

C:\Documents and Settings\Owner\Local Settings\Temporary Internet Files\Content.Outlook\I92OCIEH\Our Business - Freddie Mac.html

Link to acknowledgement that Freddie Mac securitizes all loans

# EXHIBIT "N"

# Duties and Responsibilities

**Chapter 2**

**Contents**

| Topic | Page |
|-------|------|
| Compliance and Controls | 2 |
| Changes to Institution Information | 7 |
| Insurance Coverage | 8 |

EXHIBIT "N"
Page 1 of 8

# Duties and Responsibilities

## Compliance and Controls

The Document Custodian must certify the Notes and assignments delivered by a Seller/Servicer and hold them in trust for us. Document Custodians must certify and safeguard Notes and assignments as required by the Guide, Form 1035 and this Handbook and adhere to the highest professional and ethical standards.

In order to protect Borrower privacy, Document Custodians must not release original documents, copies of documents, or any information about a Borrower or a Mortgage held in custody for Freddie Mac to anyone except Freddie Mac or the Servicer, even if the person asking is the Borrower or someone claiming to be the Borrower. If the person is claiming to be the Borrower, you should direct him or her to the current Servicer. Because of periodic reporting requirements relating to certain mortgage-backed securities, the Seller or a previous Servicer of a Mortgage may request loan-level information; you must direct all such inquiries to the current Servicer. Please contact Document Custodial Operations (DCO) if you have any questions regarding Borrower privacy.

Pursuant to Form 1035, Freddie Mac may, with or without prior notice, perform an on-site audit that relates to Notes and assignments held for Freddie Mac, on the following:

- All records and documents held by a Document Custodian,
- The vault itself (facilities, security, etc.), and/or
- The Document Custodian's policies and procedures relating to the custodial functions.

EXHIBIT "N"
Page 2 of 8

# Duties and Responsibilities

The chart below identifies a number of compliance controls; this information is not all-inclusive.

| Custodial Functions | Compliance Controls |
|---|---|
| Hold Notes and assignments in trust for the sole benefit of Freddie Mac | Do not enter into any understanding, agreement or relationship with any party to obtain, retain or claim any interest, including ownership or security, in Mortgages owned by Freddie Mac, unless specifically approved in writing, in advance by us |
| Maintain custody and control of the Notes and assignments | <ul><li>Track Notes held for Freddie Mac in accordance with note tracking requirements set forth in the Guide and this Handbook</li><li>Affix the Freddie Mac loan number to the Note, if advised by the Seller/Servicer that Freddie Mac requires it</li><li>Physically segregate Freddie Mac Notes from those held for other investors, if advised by Freddie Mac to do so</li></ul> See Guide Sections 18.2 and 18.6 for further information |
| Certify Notes, supplemental documents and assignments | See Chapter 3 of this Handbook for detailed information |
| Release documents to Servicer or designated counsel | See Chapter 4 of this Handbook for detailed information |
| Release documents to Transferee Document Custodian | See Chapter 5 of this Handbook for detailed information |

 If a Note cannot be found in the vault after the Document Custodian has received and certified it, the Document Custodian should contact Freddie Mac for instructions. See Guide Directory 9.

EXHIBIT ""
Page 3 of 8

# Duties and Responsibilities

The chart below identifies the minimum standards for the Document Custodian to maintain its eligibility as a Document Custodian and properly certify and safeguard the Notes.  See Guide Section 18.1.

| Standard | Activity or Requirement |
|---|---|
| Employ internal controls and use prudent business practices to safeguard and maintain our Notes and assignments | ▪ Provide fire-resistant storage with a minimum of two hours protection.  See Guide Section 18.2(b).<br>▪ Provide fire extinguishers or other fire retardant equipment or devices in vaults<br>▪ Restrict access to the vault to personnel with appropriate credentials, i.e. Secure ID, PIN, etc., or individuals escorted by personnel with appropriate credentials<br>▪ Maintain a visitors log of, and provide an escort to, anyone accessing the vault and/or portions of the building where custodial activities are conducted |
| Ensure that staff is knowledgeable in handling Notes and assignments, and performing other custodial duties, including access to and use of the Freddie Mac Selling System. See Guide Sections A1.12 and 18.2(b) | Provide access to our reference materials and publications, including:<br>▪ The Guide (available on AllRegs)<br>▪ This Handbook<br>▪ The Document Custodial Operations website: http://www.freddiemac.com/service/cim<br>▪ Bulletins and Industry Letters<br>Obtain access to the Selling System and ensure access security. |

EXHIBIT ""
Page 4 of 8

# Duties and Responsibilities

| Standard | Activity or Requirement |
|---|---|
| Self-Custodians must ensure that document custody functions are separate from Mortgage origination, selling, or servicing. See Guide Section 18.2(c), (d) and (e) | The document custody department and staff must be independently and separately managed from any functional area that performs Mortgage origination, selling, or servicing, and must maintain separate records, files and operations |
| Develop and maintain an independent document tracking and reporting system to monitor Notes and assignments, to track Note releases and returns, and to identify physical location of Notes.  See Guide Section 18.2(b) | ■ Include the Freddie Mac loan number in the note tracking system. The Document Custodian must reference the Freddie Mac loan number on all correspondence and related documents <br><br> 👆 If the Freddie Mac loan number begins with a "0", the "0" must be included in your note tracking system. <br><br> ■ Include the Servicer's loan number in the system <br> ■ Cross-reference the Freddie Mac loan number for each Mortgage with the Servicer's loan number <br> ■ Document Custodian's note tracking system must be separate and independent of the Servicer's systems. <br><br> 👆 Periodically, you will be required to provide an electronic list of the Freddie Mac loan numbers for all Notes you hold. You will be provided with details concerning file format and where to send the file. Please ensure that the complete 9-digit loan number is provided, including any preceding zeros, to avoid having that loan flagged as an invalid loan number <br><br> 👆 We do not use the contract number after funding.  The Freddie Mac loan number tracks subsequent loan transactions, including Transfers of Servicing |

EXHIBIT "N"
Page 5 of 8

## Duties and Responsibilities

| Activity | Requirement |
|---|---|
| Maintain and regularly update written procedures. See Guide Section 18.2(b) | Compare your procedures to this Handbook, the Guide and <u>Form 1035</u> to ensure that they meet our requirements |
| Maintain a disaster recovery (business continuity) plan. See Guide Section 18.2(b) | Your plan must include:<br>■ Immediate (within 24 hours) notice to DCO if your facility is affected by a disaster,<br>   ● Email address: <u>FMMDM@freddiemac.com</u><br>   ● Fax number: (703) 738-2141<br>■ A process for physical recovery/restoration of documents,<br>■ Plans to recover tracking system data, including electronically maintained information,<br>■ Relocation/restoration of facilities to ensure ability to perform custodial functions, and<br>■ Periodic testing and updating of the plan |
| Submit Annual Document Custodian Eligibility Certification Report. See Form 1035 | In order to maintain eligibility, submit the Annual Document Custodian Eligibility Certification Report by March 31st each year<br>Refer to our website: <u>http://www.freddiemac.com/service/cim/docs/dc_elig_cert_report.doc</u><br>or contact: <u>institutional_eligibility@freddiemac.com</u> |
| Terminate custodial relationship with Servicer | See Chapter 1 of this Handbook for further information<br><br> As Document Custodian, you are responsible for ensuring a smooth transfer of all Notes, assignments and supplemental documents. |

EXHIBIT "J"
Page 6 of 8

## Duties and Responsibilities

### Changes to Institution Information

To ensure that Freddie Mac's records for Document Custodians are accurate, Document Custodians must notify Freddie Mac, as set forth below, of an institution name or address change for the vault, changes in the vault contact person or institutional organizational changes, such as mergers or consolidations.

| Event | Description |
|---|---|
| Document Custodian address change | Certain changes will necessitate a new Form 1035. For instance, if you move Notes held for one or more Servicers to a new vault, but will continue to maintain the Notes for other Servicers at the old vault, you will need an additional Document Custodian number and Form 1035 that documents the relationship between your new vault and the particular Seller/Servicer numbers supported there<br><br> Moving Notes (except pursuant to a Form 1036, Request for Release of Documents) requires prior approval by Freddie Mac.<br><br> All Freddie Mac Notes associated with a particular Seller/Servicer number must be held in the same Document Custodian vault, or with the Designated Custodian<br><br> Each Document Custodian location must have a unique Freddie Mac-assigned Document Custodian number |
| Changes in Document Custodian name, organization, eligibility or operational contact names, e-mail address, and phone number | Provide written notification to:<br>Freddie Mac CCRM<br>1551 Park Run Drive, MS D3A<br>McLean, VA 22102-3310 |

EXHIBIT "A"
Page 7 of 8

# Duties and Responsibilities

## Insurance Coverage

Document Custodians must maintain the following insurance coverage, at a minimum:

- **Errors and Omissions Insurance** covering claims resulting from the Document Custodian's breach of duty, neglect, errors and omissions, misstatement, misleading statements or other wrongful acts committed in the conduct of document custodial services.
- **Financial institution bond** or equivalent insurance covering any loss resulting from employee dishonesty, physical damage or destruction to, or loss of any Notes or assignments while these documents are located on the Document Custodian's premises.
- **Transit Insurance Coverage:** Notes that move between Document Custodians or from one Document Custodian's vault to another must be covered by transit insurance. If Document Custodian and Seller/Servicer agree in writing that the Document Custodian will assume liability for the Notes during the move, then Document Custodian must maintain insurance that covers physical damage to and destruction or loss of the Notes. If there is no written agreement allocating liability, then the Seller/Servicer is liable for the Notes and must obtain insurance as described in Guide Section 18.4(c). Document Custodian must provide, or must verify that the servicer provides transit insurance on Notes released to designated counsel.

For additional information, see Guide Sections 18.2 and 18.4.

EXHIBIT ""
Page 8 of 8

Renee L. McCray
109 North Edgewood Street
Baltimore, Maryland 21229
Email: rlmccray@yahoo.com
(410) 945-2424

# Affidavit

## Affiant Declares the Following:

I , Renee L. McCray, declare as follows:

1.  I am over 18 years of age and the owner of property located at 109 North Edgewood Street, Baltimore, Maryland 21229 have personal knowledge of the matters set forth in this declaration and if called upon to testify I will confirm facts disclosed on this declaration and would and could competently testify thereto.

2.  Affiant affirms on March 9, 2013, I entered the official website of FREDDIE MAC https://ww3.freddiemac.com/corporate/ which as stated in the website is for the express purpose to provide homeowners with the means to determine authoritatively whether or not their loan is owned by FREDDIE MAC.

3.  **Affiant affirms, she inserted the required information which Affiant affirms by first-hand knowledge was the relevant information from her loan and the attached print out is the result of that search stating "Yes. Our records show that Freddie Mac is the owner of your mortgage and it was acquired on November 14, 2005. This date is also referred to as the Freddie Mac settlement date."**

4.  On February 15, 2013, Affiant entered the official website of FREDDIE MAC https://ww3.freddiemac.com/corporate/ and the attached information has now been removed from the FREDDIE MAC website.


I, Renee L. McCray, Affiant being of sound mind, having first-hand knowledge, affirm, state and declare that the facts contained herein are true, correct, complete and not misleading, under penalties of perjury.

Signed: _Renee L. McCray_          _2/15/14_
        Renee L. McCray, Affiant              Date

-1

**JURAT**

State of Maryland   }
                    } ss:
City of  Baltimore  }

Subscribed and sworn to (or affirmed) before me on this _____ *15* _____ day of February 2014 by Renee L. McCray, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

_Patricia Ann Shackles_
Notary

(seal)

My Commission expires: _____ *10/3/2014* _____

2