FILED

2014 APR 25  AM 7: 23

U.S. BANKRUPTCY COURT
DISTRICT OF MARYLAND
BALTIMORE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## (Baltimore Division)

| | | |
|---|---|---|
| IN RE: | } | |
| **RENEE LOUISE MCCRAY** | } | Case No. 13-26131 |
| Debtor(s) | } | Chapter 7 |
| Plaintiff(s) | } | |
| **RENEE LOUISE MCCRAY** | } | Adversary No.  13-00710 |
| vs. | } | |
| **WELLS FARGO BANK N.A.** | } | Judge Nancy V. Alquist |
| and | } | |
| **JOHN DOES 1-20** | } | |
| Defendants | } | |

### PLAINTIFF'S OPPOSTION TO MOTION TO DISMISS

COMES NOW Renee Louise McCray, Debtor respectfully herein after "Affiant", and "Plaintiff" file this Plaintiff's Opposition to Motion to Dismiss and would show unto the court as follows, to-wit:

I.

Defendant states in his motion:

"Complaint, ¶41. *She sought a declaration that the debt is nonexistent, invalid or enforceable, ...* " This is no longer a part of Plaintiff's amended complaint.  The Amended Adversary Proceeding Complaint states:

COMES NOW, Renee Louise McCray, Debtor respectfully herein after "Plaintiff" and "Affiant", file this Amended Adversary Proceeding Complaint against WELLS FARGO BANK, N.A. (hereinafter "Defendant") and JOHN DOES 1-20 (hereinafter "Defendants") and hereby

1

3)

replaces its original Adversary Proceeding Complaint (of record before the court). Therefore, this point is moot.

II.

Page 2, Defendant states in his motion:

*"However, a careful reading of McCray's Affidavit demonstrates that she does not deny that her signature appears on the document. Rather her affidavit states that the "validity of the signature" on the promissory notes is "hereby specifically denied [by McCray] as an attestation to its authenticity..."*

Plaintiff's testimony on the stand and in affidavit never denies that this is **at least a copy** of Plaintiff's actual signature on what they have produced. What Plaintiff had testified both on the stand and in affidavit was that for the various reasons Plaintiff have given Plaintiff determined this **was not** the original note Plaintiff executed...that **Plaintiff did not sign the piece of paper they produced. But that it is instead some well contrived copy using today's modern imaging technologies.**

Further, what Defendant is referencing is what the affidavit says regarding UCC 3-308. PROOF OF SIGNATURES. It says:

> "(a) In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity..."

**Plaintiff is perfectly within her rights to raise such an objection or challenge as a matter of law. This objection is also moot.**

III.

Defendant asserts:

*"Although McCray's Amended Complaint purports to present new and different allegations, it is essentially a non-substantive rewording or her prior original Complaint, which adds nothing*

2

*which would have defeated Wells Fargo's Motion to Dismiss, or in the Alternative Motion for Summary Judgment."*

The objections by the Defendant to the pleadings of the Plaintiff in her complaint: as being *"a non-substantive rewording or her prior original Complaint, which adds nothing"* is a subjective opinion not supported with sufficient specificity for the court to know what they are objecting to or would have the Plaintiff restate in a clearer way and therefore cannot be directly responded to and must be disregarded by an objective court.

Further, the unfounded, idle berating of the complaint are meaningless and an insult to the intelligence of an unbiased court and are specious or at best or again a subjective opinion of Defendant. They are entitled to their opinion but an examination of the complaint that now is shows new allegations alleged with more specificity and supported by documentary evidence and testimony of the Plaintiff and other expert witnesses.

Likewise the Defendant's recitation of their statement of facts as to the actions and filings surrounding Plaintiff's property are equally irrelevant to the complaint at hand. Further, the inclusion of facts and allegations from other actions by the Plaintiff based on totally different facts support any causes of action in this case are also irrelevant to this case and should not be considered by the court sitting on this case.

The Defendant rambles for almost 11 pages of his motion reciting the filings and actions in the public records and in the previous state foreclosure action as if because they were filed or sworn to that this automatically makes them true. Plaintiff does not dispute that certain documents were filed into the record of Plaintiff's property and were officially recorded but does dispute their validity which she has a right to assert and to prove. The dispute Plaintiff has raised is, if Defendant is not the true holder of the rights to enforce the contract then he cannot do so.

**And therefore, these historical facts surrounding the legal forms of the agreement bring no defense against the complaint, which motion must attack and nullify <u>the arguments and evidence of Plaintiff's case</u>, not merely redundantly restate its own.**

**THIS IS THE PLAINTIFF'S DISPUTE.** And once shown, **as the court must assume they can be for Defendant's purposes of gaining dismissal, they are clearly causes of action and basis to prevent the foreclosure.**

IV.

Then on page 11 Defendant argues:

*"McCray's unstated assertion is that her obligation to repay the loan was only to the original lender…Even though there are moneys due and McCray is in substantial default under the note, she doesn't believe that she should have to repay the debt to anyone, and doesn't believe the note holder has a right to enforce the provisions of the Deed of Trust."*

Again, this complaint makes no such allegation as a cause to support the relief she seeks. Plaintiff is fully aware any legal holder of the loan has the right to sell and transfer it to another which would still be fully enforceable against her and she makes no argument that it is not but instead the dispute Plaintiff has raised is, if Defendant is **not** the true holder of the rights to enforce the contract then he cannot do so and therefore any such argument opposing claims Plaintiff does not make is a 'red herring' and is moot.

On page 12 Defendant asserts:

*"Wells Fargo is holder of the note…Wells Fargo is holding the original promissory note on behalf of he owner, Freddie Mac,"* even citing the AFFIDAVIT CERTIFYING OWNERSHIP OF DEBT INSTRUMENT AND ACCURACY OF NOTE herein **EXHIBIT A**, and the REAL PROPERTY…DEBT AND RIGHT TO FORECLOSURE AFFIDAVIT, herein **EXHIBIT B**, in

4

the original foreclosure papers, **as if this were established fact, when it is this very point that is materially in dispute.**

First, Plaintiff's first hand eyewitness testimony and affidavit that what was produced March 20th in hearing purporting to be the original note and prove Wells Fargo's possession of it **was not in fact the note for the reasons cited, remains, unrebutted by any competent fact witness to the contrary.**

But more importantly, nowhere in their motion does the does the Defendant address the Affidavit of William McCaffrey, a professional document examiner and securitization expert, now in the record whose affidavit of expert professional opinion affirms on "October 22, 2005 the subject loan was place in a **FREDDIE MAC MULTICLASS CERTIFICATES** Real Estate Mortgage Investment Conduit ("REMIC") TRUST SERIES 3051." (herein **EXHIBIT O**)

This is authoritative testimony in dispute of that previously affirmed in this case in the Proof of Claim Form B-10 or the previous state foreclosure case that FREDDIE MAC for whom WELLS FARGO BANK, N.A. is supposedly acting **no longer is legal holder of the loan in question.** As shown in the complaint we are now further informed from authoritative information and documentation therein cited, as well as from authorized sources of the Securities Exchange Commission (SEC), that when Debtor's loan was sold to FREDDIE MAC **if it was and at whatever time**, it was subsequently placed into a pool of loans to serve as a security instrument or promissory bond to back or secure Mortgage Participation Certificates (PC's) being sold to the investing public as is standard practice for all loans to which FREDDIE MAC comes into ownership of according to these authorities.

The official FREDDIE MAC website says:

As excerpted from the official FREDDIE MAC website: **http://www.freddiemac.com**

5

**"Our Business"**

In 1970, Congress created Freddie Mac with a few important goals in mind:

- Make sure that financial institutions have mortgage money to lend
- Make it easier for consumers to afford a decent house or apartment
- Stabilize residential mortgage markets in times of financial crisis

To fulfill this mission, Freddie Mac conducts business in the U.S. secondary mortgage market – meaning we do not originate loans – and works with a national network of mortgage lending customers. We have three business lines: a Single Family Credit Guarantee business for home loans; a Multifamily business for apartment financing; and an investment portfolio.

**_Single-Family Credit Guarantee Business_**

In our **Single-Family business**, we use mortgage securitization to fund millions of home loans every year. Securitization is a process by which we purchase home loans that lenders originate, put these loans into mortgage securities that are sold in global capital markets, and recycle the proceeds back to lenders. This recycling is designed to ensure that lenders have mortgage money to lend.

And as is further corroborated from the authorities referenced above and other

documentation obtainable from FREDDIE MAC, that may be found at

**http://www.freddiemac.com/cim/pdf/2011_chapter_2.pdf** and

**http://www.freddiemac.com/cim/pdf/Form1035.pdf**  excerpts attached in **EXHIBIT**

**M** and **EXHIBIT N**, Freddie Mac Document Custody Procedures Handbook Duties and

Responsibilities March 2011 – 2 Chapter 2 **Compliance and Controls,** the trusts that are

created through  which the  Mortgage Participation Certificates are sold **must be the**

**holder, owner and in possession of all notes and security instruments** on which the

Mortgage Participation Certificates sold rest for security or the trust would be committing

fraud on its investors.  By the Affidavit of William McCaffrey we now know the name of

this securitization trust:  FREDDIE MAC MULTICLASS CERTIFICATES Real Estate

Mortgage Investment Conduit ("REMIC") TRUST SERIES 3051, and therefore Freddie Mac for whom Wells Fargo Bank, N.A. is supposedly acting no longer has standing to enforce this loan. An allegation which, if proven, acts to void the claims of Freddie Mac to be the actual legal, titled owner of this loan or for Wells Fargo Bank, N.A. to act in any way in their behalf relevant to this loan and to make claims in this bankruptcy.

This is absolute evidence FREDDIE MAC nor WELLS FARGO hold any further rights to this loan. They have no standing to come here in their own name seeking anything in Plaintiff's bankruptcy **or at a minimum the ownership of this loan is now clearly a material fact in dispute requiring trial precluding summary judgment and dismissal.**

Still on page 12:

*"...it is apparent that McCray is substantively contending that Freddie Mac must prove the circumstance upon which it came to be owner of her mortgage loan."*

**No, Plaintiff is asserting by the complaint there is a contradiction in official documents and public records of the case as to when and from whom *Freddie Mac* would actually assert they received the loan, which if they expect the court to believe they did receive it and actually have it, which we have shown evidence establishing they do not have it, then they would indeed have to demonstrate *"the circumstance upon which it came to be owner of her mortgage loan."* Which failure to do so is not alleged as a cause of action in the complaint but must certainly create doubt in the mind of the court as to their ownership given there is a contradiction in official documents and public records of the case as to when and from whom *Freddie Mac* would actually assert they received the loan.**

7

**There is no question that as Defendant puts it:** *"the party holding the note is entitled to enforce the note."* **There is clearly material fact in dispute as to who that really is given the evidence in the complaint, now the affidavit of Plaintiff the actual note WAS NOT produced, and the new evidence of professional document examiner and securitization expert, William McCaffrey it is actually held by** MULTICLASS CERTIFICATES Real Estate Mortgage Investment conduit ("REMIC") TRUST SERIES 3051.

V.

Defendant then goes into a long tirade on pages 13 and 14 about what Plaintiff **doe not** know or understand about negotiable instrument law or the transfer of mortgages and what entities are free to do when Plaintiff is well aware of these things. **To make his motion Defendant willfully mischaracterizes and misstate the fundamental elements of the complaint so as to create various "strawmen" which he seeks to undermine rather than the actual material elements of the complaint itself seeking to dismiss what we have not alleged as the real issues of this dispute. What Plaintiff has alleged on these issues is clear.**

As the complaint states:

However, this conflicts with the assignment referred to above from the Land Records of Baltimore City showing this loan was not first executed in behalf of the original lender, American Home Mortgage, to anyone until it was executed to Wells Fargo Bank, N.A. on June 28, 2012, some six and a half years later than the Freddie Mac website indicates American Home Mortgage first transferred its interests in this loan.

44.    Further, a letter Plaintiff received from Wells Fargo Home Mortgage when they were acting as servicer in November 22, 2011, see **EXHIBIT I** attached, also prior to the assignment to Wells Fargo Bank, N.A. on June 28, 2012 and prior to any ability on its part

to transfer the loan, states that the investor/note holder for this loan was already Federal Home Loan Mortgage Corporation on November 22, 2011.  Again, this conflict with the fact the assignment was first executed in behalf of the original lender, American Home Mortgage, executed to WELLS FARGO BANK, N.A. on **June 28, 2012 as being the first transfer of interest in this loan to anyone.**

45.  Further, still copies of the alleged note, see **EXHIBIT J** attached, with supposed indorsements included in Defendant's foreclosure action filed in Baltimore City Circuit Court in February 2013, **AFTER the assignment to WELLS FARGO BANK, N.A. on June 28, 2012, which is still the only assignment of record, shows the note was originally indorsed by** AMERICAN HOME MORTGAGE, **specifically to WELLS FARGO BANK, N.A.** and then indorsed in blank by **WELLS FARGO BANK, N.A.** transferring ownership of it after that **by possession alone** having been made then a Bearer Instrument to whomever may be the actual holder of it.  The findings of the official website of FREDDIE MAC **https://ww3.freddiemac.com/corporate/** indicates FREDDIE MAC acquired the loan on November 14, 2005 little more than a month after the loan had been made on October 7, 2005.  From this it can be seen these alleged indorsements had to have taken place between October 7, 2005 when the loan was made, and November 14, 2005, the date the official website of FREDDIE MAC says they acquired it, again placing the official records and documents of this loan in conflict as assignment of the trust deed purporting to transfer such rights and interests in this debt to Wells Fargo Bank, N.A. was not made until some six and a half years later on June 28, 2012.

Yet Plaintiff has a letter of January 10, 2012 from Wells Fargo Home Mortgage, see **EXHIBIT K,** attached, stating in part **"The loan was sold on the secondary market to**

**Federal Home Loan Mortgage Corporation, known as Freddie Mac, on November 14, 2005"...** Yet this contradicts **EXHIBIT J** above, included in Defendant's foreclosure action filed in Baltimore City Circuit Court in February 2013, which **shows the note was originally indorsed by** AMERICAN HOME MORTGAGE, **specifically to WELLS FARGO BANK, N.A. first**, and **then** indorsed in blank by **WELLS FARGO BANK, N.A.**

46.    Further, Plaintiff have received **a Certified Copy** of the alleged Note from Wells Fargo Home Mortgage **with no indorsements** in September 2012 see **EXHIBIT L** attached.

So there is an unresolved dispute between records of this loan as to when, and how and from what true holder of the loan at that time Federal Home Loan Mortgage Corporation received the loan if in fact they have received it at all for whom Wells Fargo Bank, N.A. may now be acting in this action.

Yet the record further shows the actual note has at no time in the Baltimore City Circuit Court action to foreclose or in this bankruptcy been produced to determine if there are additional indorsements now contained on it that may alter legal title to it, or for it to be examined by authoritative experts who might render expert witness opinion that what is purported to be the original note allegedly held by Wells Fargo Bank, N.A. for Freddie Mac is in fact the original note in their possession. While Defendant has complied with the documentation required to initiate foreclosure under Maryland law, the issues of their possession of that right has been clearly disputed in Plaintiff's previous actions in this Court and this Court must decide it.

**The explanations Defendant has made may be plausible to reconcile the variant record of who has owned the note versus who has owned the deed of trust but plausible and hypothetical is not fact or evidence of who does now own these rights when Defendant is now**

10

choosing to ignore the newly received testimony of professional document examiner and securitization expert, William McCaffrey "October 22, 2005 the subject loan was placed in a FREDDIE MAC MULTICLASS CERTIFICATES Real Estate Mortgage Investment Conduit ("REMIC") TRUST SERIES 3051."

Yet these dates even contradict as the findings of the official website of FREDDIE MAC **https://ww3.freddiemac.com/corporate/** indicates FREDDIE MAC acquired the loan on November 14, 2005. Plaintiff case presumes Defendant has proven they are the note holder which they decidedly have not which clearly places their holding of the note as material fact now in dispute.

Further, as shown from the complaint, page 18, ...as is further corroborated from the authorities referenced above and other documentation obtainable from FREDDIE MAC, that may be found at **http://www.freddiemac.com/cim/pdf/2011_chapter_2.pdf** and **http://www.freddiemac.com/cim/pdf/Form1035.pdf** excerpts attached in **EXHIBIT M** and **EXHIBIT N**, Freddie Mac Document Custody Procedures Handbook Duties and Responsibilities March 2011 – 2 Chapter 2 **Compliance and Controls,** the trusts that are created through which the Mortgage Participation Certificates are sold **must be the holder, owner and in possession of all notes and security instruments** on which the Mortgage Participation Certificates sold rest for security or the trust would be committing fraud on its investors, ...

Therefore, Defendant's explanation that it doesn't matter whether the note is transferred in a different time frame from the trust deed is further suspect if in fact both note and trust deed went into this securitization trust at the same time as would be required for the security of their investors as indicated here and for the trust not to be in violation of SEC regulations.

## VI.

Still on page 14:

*"According to McCray's allegations in her Amended Complaint, an officer of a MERS member that is also the promissory note holder is eligible to make assignment on behalf of MERS. Amended Complaint, ¶36. Here so long as Mr. Altringer was an officer Wells Fargo, as McCray alleges he was, he was eligible to execute the document on behalf of MERS."* **BUT NOT SO!**

**Somehow Defendant manages to fail to grasp the obvious:  the ASSIGNEE CANNOT ASSIGN INTEREST IN THE DEED OF TRUST <u>TO</u> <u>ITSELF</u> WITHOUT ALREADY HOLDING AND POSSESSING THOSE RIGHTS GIVEN TO THEM BY THE ORIGINAL LENDER OF A SUCCESSOR OR ASSIGN OF THE ORIGINAL LENDER AND THERE IS NOTHING IN THE PUBLIC RECORDS THAT ANY SUCH RIGHTS TO THE LOAN HAD BEEN GIVEN TO WELLS FARGO.**

As Defendant has well pointed out, according to the MERS Certifying Handbook, for Joel Altringer to make a valid legal assignment of this mortgage to Wells Fargo Bank, N.A. he needed to be an officer of the original lender for whom Mortgage Electronic Registration Systems, Inc. was acting as nominee or its successor or assign.  The point is there was no recorded successor or assign to the rights of the trust deed yet.  From the record it was still American Home Mortgage <u>and</u> Defendant now clearly acknowledges Mr. Altringer was an officer of Wells Fargo, **NOT AN OFFICER OF AMERICAN HOME MORTGAGE OR FOR THAT MATTER NOT AN OFFICER OF ANY OTHER ENTITY IF ANOTHER HAD RECEIVED THE LOAN FROM AMERICAN HOME MORTGAGE DURING THIS TIME.**

**As we have shown in the complaint:**

The MERS certifying Handbook, **EXHIBIT E** herein attached, which may be obtained through one of MERS' self authenticating websites or from other authoritative sources, specifically demonstrates in the sample Corporate resolution found therein (pages 3-4) that for a candidate to be an assistant secretary or vice president of MERS, and as such, authorized to make assignments in its behalf **must be an officers of the company that is a member of MERS, whose employees are being certified in the MERS resolution to act for MERS in behalf of this company** to:

"(1) release the lien of any mortgage loan registered on the MERS System that is **shown to be registered to the Member;**

(2) assign the lien of any mortgage loan naming MERS as the mortgagee **when the Member is also the current promissory note-holder,** or if the mortgage loan is registered on the MERS System, is shown to be registered to the Member;"

**BUT AS WE HAVE SHOWN, THERE IS NOW CONTRADICTORY EVIDENCE AS WHO** the current promissory note-holder **MAY HAVE BEEN AT THE TIME OF THE ASSIGNMENT June 28, 2012. THERE IS NOW DOCUMENTARY EVIDENCE THAT IN FACT AS William McCaffrey affirms,** ... "October 22, 2005 the subject loan was placed in a FREDDIE MAC MULTICLASS CERTIFICATES Real Estate Mortgage Investment Conduit ("REMIC") TRUST SERIES 3051." **THAT MEANS THE NOTE TOO!**

VII.

Page 15, Defendant asserts:

*"Finally, McCray alleges that "[n]o possession of the note has been demonstrated [by Wells Fargo by] its proven, certified, authenticated production before the Court." Amended*

13

*Complaint, ¶50.   First, McCray ignores the affidavits under oath, made in foreclosure proceeding.*"  **Plaintiff does not ignore it, she disputes it!**  *"Secondly, Court have recognized that a debtor's "bare statement" denying the authenticity of a copy of the note and demanding production of the original is insufficient to cast doubt on the lender's evidence that it is the holder of note."*  **Plaintiff's affidavit is hardly** *a debtor's "bare statement"* **as Plaintiff cites numerous facts of the note examination that disqualify that piece of paper as being the original note Plaintiff signed.  Again from Plaintiff's affidavit:**

> Affiant has examined the supposed original note and has testified it is not the original that she signed **October 7, 2005 and has affirmed so for the following** reasons upon further contemplation of what she was presented as the original promissory note.

> Affiant affirms the original note I signed **would now be over 8 years old.** Affiant affirms the **document produced at the Hearing felt to be crisp and seemed to be new paper, not like a note 8 years old would be.**

> Further Affiant affirms this instrument, upon her examination of it, did not show the pressure imprint of my signature which I specifically recall being present on the actual note signed that day of the closing.

> Further Affiant affirms the record shows opposing counsel had provided no competent fact witness of expert authority the day of the hearing certifying under oath where this instrument came from, who has had it and how long Movant claims to have had it, nor did they provide affidavits of any expert document examiner or handwriting experts swearing this is Affiant's actual signature and not a well contrived copy using today's modern imaging technologies to declare **it is Affiant's note over her own eye witness testimony that it is not.**

> Affiant affirms I specifically recall the original note would contain my fingerprints from the loan closing and that there would be none from her examination of it the day of the hearing as she examined the document with latex gloves and Affiant has no knowledge of facts to the contrary that any finger print expert would be able to confirm the presence of her fingerprints on this document to establish **whether she had touched this purported original note prior to examination in hearing.**

Finally on page 15:

*"A promissory note, including its endorsements, is self authenticating and extrinsic evidence is not required to demonstrate the authenticity"..."* the indorsements are self authenticating and McCray does not allege (and has no evidence) that the indorsement are not valid and authentic. It is not plausible to assume that McCray has personal knowledge that any indorsement is not authentic."

Plaintiff has no dispute with the indorsements as being the ones that likely appear on the actual note were it to be produced. And indeed *"A promissory note, including its endorsements, is self authenticating and extrinsic evidence is not required to demonstrate the authenticity."* <u>This assumes that the actual promissory note is being produced</u>, which Plaintiff for good causes shown above disputes and which is a material fact requiring trial precluding summary judgment on this point alone.

Both Plaintiff and Defendant have acknowledge what appears to be a copy of the note shows it was indorsed in blank by WELLS FARG BANK, N.A. transferring ownership of it after that <u>by possession alone</u> having been made then a Bearer Instrument to whomever may be the actual holder of it. As the Court knows anyone is currently entitled to possession of the indorsed in blank Note. Given the multiple conflicts in the Public Land Records and documents as evidence surrounding the disposition of this loan cited in this case as to the vast discrepancies in timeframes as to ownership of these instruments ownership of the note is a material fact now still in dispute and there must be trial on this point alone if on nothing else.

The issue of *authenticity* referred to is that of whether what is presented is a true and correct representation of the appearance of the note as it now is...NOT whether the piece of paper is the actual note itself. And an examination of some of the case law cited to

support his position will reveal that in some of these cases the actual original note was not what was being examined but copies of the authentic note produced to determine indorsements, validity of signature, etc.

Further, as cited above, regarding UCC 3-308. PROOF OF SIGNATURES. It says:

"(a) In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. **If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity."**

Plaintiff is perfectly within her rights to raise such an objection or challenge as a matter of law.

In this instance Plaintiff is not denying this presented was a copy of Plaintiff's signature on the actual note she signed but that this piece of paper presented to her WAS the actual note Plaintiff signed, which it WAS NOT. And since in this case the actual note is believed to contain a blank indorsement as being the current indorsement, possession of the actual note MUST BE DEMONSTRATED by its production. Plaintiff iterates the facts of what she examined as the purported original note as to why she knows it was not. Defendant has still given the court no competent fact witness of any authority or expertise to refute Plaintiff's testimony. Therefore, the court presently has nothing to consider except the unrebutted, unrefutted first hand eye witness testimony of the Plaintiff that what was presented to Plaintiff was not the note Plaintiff executed in 2005.

## MEMORANDUM OF LAW IN SUPPORT

[Note: While case law is not necessarily binding on the court's decision as a matter of precedent the court is expected, as a matter of long standing case law which it knows full well and better than the Plaintiffs, that it must allow leeway to pro se litigants and the court is asked to weigh

these citations of law on the legal issue at hand from other jurisdictions making its own comparisons with these citations and those which the court is most familiar with on a daily basis in dealing with matters of summary judgment in its own jurisdiction.]

Plaintiff would show unto the court:

Plaintiff's factual allegations in the complaint must be accepted as true, if not rebutted along with any reasonable inferences that may be drawn there from. *Ryland v. Shapiro, 708 F.2d. 987 (5th Cir.1983), (and Morris v. National Cash Register Co. , 44 S.W. 2d 433).*

As Defendant has noted, the Court must carefully review all evidentiary matters before it; admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. **in the light most favorable to the party against whom the motion for summary judgment is made.** Brown v. Credit Ctr. Inc. 444 So. 2d, 358, 362 (Miss 1983), essentially considered to mean, "When considering a motion for summary judgment, a Court must review the evidence **in the light most favorable to the non moving party and give the non moving party the benefit of every doubt.**" Evans v. Trader, 614 So. 2d. 955 (Miss 1993) quoting Sherrod v. United States Fidelity & Guaranty Co., 518 So. 2d. 640, 642 (Miss 1987); McMullan v. Geo Southern Energy Corp. 556, So. 2d. 1033, 1036 (Miss 1990).

And Plaintiff's factual allegations in its affidavits, must be accepted as true, if not rebutted **(which they have not been)**, and accepted along with any reasonable inferences that may be drawn there from, as required under the standards for summary judgment here noted, and are supported by evidence of affidavit or other authoritative documentary information Plaintiffs are able to present, which when seen" in the light most favorable" to the Plaintiffs and accepted as true, as case law and summary judgment standard here noted again require, since it is not

17

rebutted by the Defendant, then: material fact in dispute that will determine the outcome of the case will have been established and defendant had no basis to seek summary judgment.

"Where doubt exists as to whether there is a genuine issue of material fact, the trial judge should err on the side of **denying the motion** and permitting a full trial on the merits." Ellis v. Pows, 645 So. 2d. 947, 950 (Miss 1994) also Brown v. Credit Ctr. Inc. 444 So. 2d, 358, 362 (Miss 1983). 'If any triable issues of fact exist, the lower Court's decision to grant summary judgment will be reversed', Miller v. Meeks, 762 So. 2d. 302, 301 (Miss 2000).

As noted Defendants offered no authoritative testimony of any document examiner that this was the original note and were unable to refute Plaintiffs' eyewitness testimony that it was not with any contradictory authoritative testimony of their own when it was their duty to do so. Would not the Court wonder if Defendant is silent in this regard because under penalty of perjury they cannot do so?

At the present time Plaintiffs' factual allegations in the complaint must be accepted as true, since they are not rebutted, and any reasonable inferences that may be drawn there from accepted as true, *Ryland v. Shapiro, 708 F.2d. 987 (5th Cir.1983), (and Morris v. National Cash Register Co. , 44 S.W. 2d 433)*, and since it is a material allegation in dispute as to whether THE NOTE HAS OR HAS NOT BEEN PRODUCED EVIDENCING DEFENDANT'S OWNERSHIP AND POSSESSION OF IT AS REQUIRED BY MARYLAND LAW FOR FORECLOSURE TO GO FORWARD in their behalf, summary judgment is out of place and out of order in this case at this time.

**And If not sufficient to give summary judgment to the Plaintiff, at a minimum the possession and thereby ownership of the note is a material fact now still in dispute and there must be trial on this point alone if on nothing else. And the motion must be denied .**

**Plantiff prays the court that it be so ordered.**

Respectfully submitted,

Renee L. McCray
In Propria Persona
109 Edgewood Street
Baltimore, Maryland 21229
(410) 945-2424
rlmccray@yahoo.com


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing Motion above will be sent to the parties listed below by USPS First Class Mail on April 25, 2014.


Michael S. Barranco
TREANOR POPE & HUGES, P.A.
500 York Road
Towson, Maryland 21204

Charles R. Goldstein, Trustee
1 East Pratt Street
Suite 800
Baltimore, Maryland 21202

Dated: April 24, 2014

Renee L. McCray

ENVELOPE-NIGHT BOX

2014 APR 24  PM 8: 41

# EXHIBIT
# "O"

FILED

2014 APR 25  AM 7: 28

U.S. BANKRUPTCY COURT
DISTRICT OF MARYLAND
BALTIMORE

Arizona Document Services
www.AZDocumentServices.com
AZCLDP #81339 | 480.292.7996

1

2  *RENEE L. MCCRAY*

3  **Real Property Located:**

4  109 N. EDGEWOOD STREET
   BALTIMORE, MD 21229

5

                                             AFFIDAVIT OF
                                             WILLIAM McCAFFREY

6

7  I William McCaffrey, Declare as follows:

8  I am over the age of 18 years and qualified to make this Affidavit. I am a resident of the
   State of Arizona and formulate this Affidavit based on my own personal knowledge and

9  have no direct or indirect interest in the outcome of the case at bar for which I offer my

10 observations, analysis, opinions and testimony.

11

12 My experience in the banking industry encompasses over 30 years employment for

13 federally insured institutions. I was formerly Business Development Manager with Indy Mac

14 Bank FSB for over ten years and currently employed as Consultant for Housing Mortgage

15 Consultants Inc.

16

17 I have personal knowledge and experience to render opinions in the topic areas related to

18 the securitization of mortgage loans, derivative securities, the securities industry, Uniform

19 Commercial Code practices, predatory lending practices, Truth in Lending Act

20 requirements, loan origination and underwriting, accounting in the context of securitization

21 and pooling and servicing of securitized loans, assignment and assumption of securitized

22 loans, creation of trusts under deeds of trust, and issuance of asset backed securities and

23 specifically mortgage-backed securities by special purpose vehicles in which an entity is

24 named as trustee for holders of certificates of mortgage backed securities, the economics of

25 *securitized residential mortgages during the period of 2001-2008*, appraisal fraud, and its

26 effect on APR disclosure, usury and foreclosure of securitized and non-securitized

27 residential mortgages.

28

**AFFIDAVIT of William McCaffrey**

Arizona Document Services
www.AZDocumentServices.com
AZCLDP #81339 | 480.292.7996

I have been qualified to testify in Maricopa County Superior Court, and US District Court. In the past few years and have served as Expert Witness in numerous civil cases. I have testified at trial in Federal and Superior Court including Nevada and Arizona. Superior Court Cases include Marshall and Isley Bank v. Izzo, Slikker v. Kondaur, Brokalakis v. National City Mortgage, and Wells Fargo Bank v. Dutson.  *Superior Court Judges' Ronan, Garcia, and Budoff, as well as Commissioners' Davis, Ellis, and Hamner have affirmed my expert testimony.*

I am also a Securitization Analyst and use specialty-licensed software, which permits *investors and licensed users to access any "named Trust-Entity" which are The* Corporate/Trust Documents officially filed with the Securities and Exchange Commission.

I can find each Mortgage Note that is held by this named Trust-Entity, and I can verify its status at any given time. I have the knowledge and experience to perform these searches with accuracy.

At the request of Ms. McCray I submit this Affidavit and have personal first hand knowledge of the following facts:

October 7, 2005 the subject property with the location of 109 N. EDGEWOOD STREET *BALTIMORE, MD 21229 was secured in favor of AMERICAN HOME MORTGAGE.*

The loan has been securitized which is the process of aggregating large numbers of other Notes in what is called a mortgage pool and then selling security interests in that pool of mortgages to investors. The sales that took place in this case would have fractionalized possession of the Note over many different investors.

October 22, 2005 the subject loan was placed in a FREDDIE MAC MULTICLASS CERTIFICATES Real Estate Mortgage Investment Conduit ("REMIC") TRUST SERIES 3051.

**AFFIDAVIT of William McCaffrey**

Arizona Document Services
www.AZDocumentServices.com
AZCLDP #81339 | 480.292.7996

This trust was intended to be a REMIC within the meaning of section 860D of the Internal Revenue Code as amended in 1986 ("The Code") per the Trust Agreement which governs the rules of the subject trust. Wall Street firms successfully lobbied Congress to do away with double taxation in 1986.

This legislation created the REMIC which was not taxed at the entity level. This change automatically boosted its yields over other mortgage-backed securities that would otherwise be taxed. Unsurprisingly, REMICs displaced other types of mortgage-backed securities and soon became the dominant choice of entity for such transactions.

To obtain REMIC classification, a trust must satisfy several requirements. Of particular interest is the requirement that within three months after the trust's startup date substantially all of its assets must be qualified mortgages.

The regulations provide that substantially all of the assets of a trust are qualified mortgages. however my research indicates the subject conduit does not comply, as OCTOBER 28, 2005 was the closing date to comply with Internal Revenue Service guidelines.

JUNE 28, 2012, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC ("MERS") records Corporate Assignment of Deed of Trust in violation of REMIC procedures. Subsequently the assignment is deemed void as well as any others following.

The potential holder in due course of the McCray Promissory Note therefore could not be Wells Fargo Bank, NA, or Federal Home Loan Mortgage Corporation. The holder in due course falls within one or more of the following classifications:

      (a)    Investors who purchased asset backed securities in which ownership of the loans were described with the intent to convey ownership of the obligation as evidenced by the promissory note and an interest in real property consisting of a security interest held by an entity that was described as the beneficiary of a Trust created by an instrument entitled Mortgage;

AFFIDAVIT of William McCaffrey

Arizona Document Services
www.AZDocumentServices.com
AZCLDP #81339 | 480.292.7996

    (b)    Insurers that paid some party on behalf of said investors;

    (c)    Counterparties on credit default swaps;

    (d)    Conveyances or constructive trusts arising by operation of law through cross collateralization and over-collateralization within the aggregate asset pools or later within the Special Purpose Vehicle tranches;

    (e)    Any other party that has traded in mortgage backed securities from the aggregated pools or securitized tranches containing interests in the loans;

The only course of action available to challenge such foreclosure is a judicial lawsuit brought by the borrower/obligor. The process by the foreclosing parties shifts the burden of proof to the borrowers in the loans to allege facts that are solely within the knowledge of the lenders, and which facts that are intentionally withheld from the borrowers.

Ms. McCray has no knowledge but requested information from the loan servicers and done due diligence to determine whether the note, security interest, or obligation has been extinguished, paid in whole, or in part by co-obligors, insurers and/or federal bailout funds.

All factual testimony or statements made in this Affidavit are true and correct according to my research and all opinions stated herein are pursuant to the decades of relevant experience within the banking industry.

FURTHER AFFIANT SAYETH NAUGHT

_William McCaffrey_

SWORN TO AND SUBSCRIBED before me, the undersigned notary public, this _11_ day of _March_ 2014.

NOTARY PUBLIC
STATE OF ARIZONA
Maricopa County
AARON ARGANDONA
My Commission Expires October 23, 2015

Notary Public

My commission expires: _10-23-15_

**AFFIDAVIT of William McCaffrey**